[Nos. 4329 and 4330.  Decided August 7, 1902.]

THE STATE OF WASHINGTON *on the Relation of John C. Murphy,* v. HENRY McBRIDE, *Governor of the State of Washington.*

THE STATE OF WASHINGTON *on the Relation of W. A. Hagemeyer,* v. HENRY McBRIDE, *Governor of the State of Washington.*

GOVERNOR — LIEUTENANT GOVERNOR — VACANCY IN OFFICE.

Article 3, §§ 2, 3, of the state constitution provide that the governor and lieutenant governor shall each hold his office for a term of four years, and until his successor is elected and qualified.   Section 10 of the same article provides that "in case of the removal, resignation, death or disability of the governor, the duties of the office shall devolve upon the lieutenant governor, and, in case of a vacancy in both the offices of governor and lieutenant governor, the duties of governor shall devolve upon the secretary of state, who shall act as governor until the disability be removed or a governor be elected." *Held,* that in case of the death of a governor the duties of the office devolve upon the lieutenant governor for the balance of the term and there is no vacancy in the office of governor requiring to be filled by election.

*Held, further,* that when the lieutenant governor assumes the duties of governor on the death of the incumbent of that office, the office of lieutenant governor does not thereby become vacant, but that officer retains the office for the term elected, intrusted, however, with the powers and duties of governor.

SAME — SUCCESSION OF LIEUTENANT GOVERNOR TO DUTIES OF GOVERNOR — CONFLICT BETWEEN DUTIES AS GOVERNOR AND PRESIDENT OF SENATE.

Although art 3, § 16, of the constitution makes it the duty of the lieutenant governor to be presiding officer of the state senate, he is relieved therefrom when the duties of governor devolve upon him by art 2, § 10, of the constitution, which provides that when the lieutenant governor shall act as governor the senate shall choose a temporary president for that body.

SUPREME COURT JUDGES — TEMPORARY INCREASE IN NUMBER.

The number of judges of the supreme court may be temporarily increased, and decreased again to a minimum of five, whenever in the judgment of the legislature necessity or occasion requires, under the provisions of art 4, § 2, of the constitution, which declare that the supreme court shall consist of five judges and that the legislature may increase the number of such judges from time to time (REAVIS, C. J., and ANDERS, J., dissent).

SAME — TERMS OF APPOINTIVE JUDGES — CONSTITUTIONAL LAW.

Under art 4, § 3, of the constitution, which provides that judges of the supreme court shall be elected and "the terms of judges elected shall be six years from and after the second Monday in January next succeeding their election," and that, "if a vacancy occur in the office of a judge of the supreme court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election, and the judge so elected shall hold the office for the remainder of the unexpired term," the six year term fixed by the constitution is applicable only to elected judges, and a statute fixing the term of appointive judges for a period short of the succeeding general state election would not be in conflict therewith ( REAVIS, C. J., and ANDERS, J., dissent).

### Original Application for Mandamus.

*John E. Humphries, J. W. Robinson, S. M. Bruce, John F. Dore, Phil Skillman* and *John C. Murphy,* for relators.

*W. B. Stratton,* Attorney General, *C. C. Dalton* and *E. W. Ross,* for respondent.

*Bo Sweeney,* as *amicus curiae.*

The opinion of the court was delivered by

MOUNT, J.—These two cases involve the same questions, and for that reason were consolidated at the argument and heard as one. They are applications for a writ of mandamus to respondent, requiring him to issue his

proclamation for the election of a governor, a lieutenant
governor and three justices of the supreme court at the
next general election.  It appears from the petitions that
Hon. John R. Rogers and Hon. Henry McBride were at
the general election held in November, 1900, elected to
the offices of governor and lieutenant governor, respec-
tively, for the term of four years, beginning on the sec-
ond Monday of January, 1901; that these officers duly
qualified as such, and entered upon the discharge of their
respective duties; that on December 26, 1901, the Hon.
John R. Rogers died, and respondent thereupon took the
oath of office, and is now acting governor; that there is
a vacancy in the office of governor, and also in 'the
office of lieutenant governor.  It also appears that the
legislature of 1901 passed an act increasing the number
of judges of this court from five to seven; that appoint-
ments were made to fill the vacancies created by the act;
that the terms of office of the two judges so appointed
will expire on the second Monday of October, 1902; that
the governor refuses to issue his proclamation for the
election of a governor, lieutenant governor and three
supreme court justices at the next general election to be
held in November of this year.  Respondent appeared and
filed a demurrer to each of the petitions.

The first question presented is, does the death of the
governor cause a vacancy in that office, which may be
filled by an election for the unexpired term, and, if not,
does the office of lieutenant governor become vacant when
the incumbent assumes the duties of governor?  The
provisions of the constitution relating to this question are
as follows (§ 2, art. 3):

"Governor, term of office.  The supreme executive
power of this state shall be vested in a governor, who shall

22—29 Wash.

hold his office for a term of four years, and until his suc-
cessor is elected and qualified."

Section 3, art. 3, provides that the lieutenant governor
shall hold his office for four years, and until his successor
is elected and qualified.

"§10, [art. 3]. Vacancy in. In case of the removal,
resignation, death or disability of the governor, the duties
of the office shall devolve upon the lieutenant governor,
and in case of a vacancy in both the offices of governor and
lieutenant governor, the duties of governor shall devolve
upon the secretary of state, who shall act as governor until
the disability be removed or a governor be elected."

This last section clearly provides (1) that upon the
death of the governor the duties of the office shall devolve
upon the lieutenant governor, and (2) in case of a vacancy
in the offices of both governor and lieutenant governor the
duties of governor devolve upon the secretary of state,
who shall act until the disability be removed or a gover-
nor elected. This provision of the constitution of this
state is in effect the same as the provision of the constitu-
tion of the United States with reference to the succes-
sion of the vice-president to the office of president of the
United States. Upon the death or disability of the presi-
dent, it has uniformly been held that the vice-president
holds the office of president until a successor to a deceased
president comes to assume the office. *Merriam v. Clinch,*
6 Blatchf. 9. In that case it was said:

"It has never been supposed that, under the provision of
the constitution, the vice-president, in acting as presi-
dent, acted as the servant, or agent, or *locum tenens,* of
the deceased president, or in any other capacity than as
holding the office of president fully, for the time being,
by virtue of express authority emanating from the United
States."

In the case of *Chadwick. v. Earhart,* 11 Ore. 389 (4 Pac. 1180), where the court was considering a constitutional provision of the state of Oregon in almost the identical language of §10, *supra,* it was said:

"In the first place, it is not shown how an office can be vacant and yet there be a person, not the deputy, or *locum tenens,* of another, empowered by law to discharge the duties of the office, and who does in fact discharge them. It is not explained how, in such a case, the duties can be separated from the office, so that he who discharges them does not become an incumbent of the office. And, in the second place, how a person can fill the office of governor without being governor."

It is a well settled rule that an office is not vacant so long as it is supplied, in the manner provided by the constitution or laws, with an incumbent who is legally authorized to exercise the power and perform the duties which pertain to it. Mechem, Public Officers, § 126; Throop, Public Officers, § 431. The constitution having provided that in case of the death of the governor the duties of the office shall devolve upon the lieutenant governor, there is no vacancy in the office of governor. It is not necessary to discuss the meaning of the provision "who shall act as governor until the disability be removed or a governor be elected," because that provision, as used here, clearly refers only to the secretary of state, in case that officer should assume the duties of governor under the contingency named.

What is said above applies equally to the lieutenant governor. When the lieutenant governor, by virtue of his office and of the command of the constitution, assumed the duties of governor on the death of Governor Rogers, the office of lieutenant governor did not thereby become vacant, but the officer remained lieutenant governor, in-

trusted with the powers and duties of governor. *People ex rel. Lynch v. Budd,* 114 Cal. 168 (45 Pac. 1060, 34 L. R. A. 46); *State ex rel. McMillan v. Sadler,* 25 Nev. 131 (58 Pac. 284); *People ex rel. Church v. Hopkins,* 55 N. Y. 74; *Robertson v. State ex rel. Smith,* 109 Ind. 79 (10 N. E. 582, 643).

It is argued, however, that since it is made the duty of the lieutenant governor, under the constitution, to be presiding officer of the state senate (§16, art. 3), and as such to approve all bills passed by that body, he must, as governor, review and approve or reject bills which as lieutenant governor he has already approved. These duties are, no doubt, inconsistent; but this argument, we think, is fully met by another provision of the constitution, which provides at § 10, art. 2, in substance, that when the lieutenant governor shall act as governor the senate shall choose a temporary president. The lieutenant governor, therefore, when the duties of governor devolve upon him, is relieved of the duties of presiding officer of the senate.

The legislature of 1901 passed the following act (Laws 1901, p. 345):

"An act increasing the number of judges of the supreme court of the State of Washington, and declaring an emergency.

"Section 1. The supreme court of the state of Washington, from and after the passage of this act, up and to the first Tuesday, after the first Monday in October, 1902, shall consist of seven judges; *Provided,* That after the first Tuesday after the first Monday in October, 1902, said supreme court shall consist only of five judges.

"Sec. 2. The governor is hereby authorized to appoint one from each of the dominant political parties the two additional judges provided for by section 1 of this act, which appointees shall hold office until the first Tuesday

after the first Monday in October, 1902, and no longer, and each of the said judges shall receive a salary of four thousand dollars per annum."

Section 3 declares an emergency. After this act was passed, the governor, by authority thereof, made two appointments as provided therein. It is conceded in this case that the legislature may increase the number of judges of this court from five to seven; but it is argued (1) that when the increase is once made no decrease can be made, and (2) that the temporary increase made is in conflict with the constitutional term. We are, therefore, urged to hold that so much of the act as increased the number of judges of this court to seven may be allowed to stand, and the remainder be declared void, thereby making a permanent increase, instead of a temporary one. This reasoning, it seems to us, must fail, because by the very terms of the act the increase of the number of judges from five to seven was temporary. This intention is clearly and definitely expressed as the single purpose of the act, so that if the temporary increase is void the whole act must fail. Cooley, Constitutional Limitations (6th ed.), p. 211.

The rule of law is well settled in this country that the legislative department is not made a special agency for the exercise of specially defined legislative powers, but is intrusted with general authority to make laws at discretion, except where the constitution has imposed limits upon this legislative power. Cooley, Constitutional Limitations, pp. 104, 201. In other words, the constitution of this state is a limitation upon the powers of the legislature, and not a grant of power. Hence, before an act of the legislature may be declared unconstitutional, it must appear that the act is in conflict with some express

provision of the constitution which prohibits the act or parts of the act complained of. Bearing this rule in mind, we consider the questions presented.

1.    The constitution provides (§ 2, art. 4) :

"The supreme court shall consist of five judges, a majority of whom shall be necessary to form a quorum and pronounce a decision.  .  .  .  The legislature may increase the number of judges of the supreme court from time to time, and may provide for separate departments of said court."

. The evident meaning of the first provision is that this court shall never be decreased below five judges.   The second provision gives express authority for an increase of the number of judges.   There is no express provision for a decrease in the number after the increase has been made unless it be found in the phrase "from time to time." If it be conceded, as argued by relators, that the words "from time to time" mean that the legislature may at one time make one increase, and at another time another increase, these words add nothing to the declaration that "the legislature may increase the number of judges of the supreme court," because without the words "from time to time" that authority rests in the legislature by reason of the fact that no limitation is placed upon the number to which the court may be increased.   We must therefore look for some meaning in the words "from time to time," or conclude that they were used without purpose. These words are defined by lexicographers to mean "occasionally." The word "occasionally" is defined to mean: "As occasion demands or requires; as convenience requires; accidentally, or on some special occasion." But whatever may be the technical meaning of the words, they certainly cannot be held to mean that the legislature may not decrease the number of judges after the increase

thereof.  If, therefore, the legislature has power to increase the number of judges as occasion or convenience requires, and there is no restriction upon a decrease, except below five, it follows that a decrease may be had to this minimum when necessity or occasion requires, of which necessity or occasion the legislature is the exclusive judge.  Again, the fact that the constitution has placed a minimum limit and permitted an increase in the number of judges is a strong inference that the increased number may be reduced to the minimum.  Furthermore, the legislative and the executive branches of the state government have placed this construction upon their powers, and, where these co-ordinate branches have construed a constitutional provision and acted upon it, great weight will be given thereto. *State ex rel. Dustin v. Rusk,* 15 Wash. 403 (46 Pac. 387).

2.  Does the act conflict with the provision relating to the terms fixed by the constitution?  Section 3, art. 4, of the constitution, provides:

"The judges of the supreme court shall be elected by the qualified electors of the state at large, at the general state election, at the times and places at which state officers are elected, unless some other time be provided by the legislature.   .   .   .   After the first election the terms of judges elected shall be six years from and after the second Monday in January next succeeding their election.  If a vacancy occur in the office of a judge of the supreme court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election, and the judge so elected shall hold the office for the remainder of the unexpired term."

The term fixed by this provision is six years, and applies only to judges *elected.*  This term begins on the second Monday in January next succeeding an election, and

cannot be changed by the legislature. Mechem, Public Officers, § 387; Throop, Public Officers, § 311; *State ex rel. Dyer v. Twichell,* 4 Wash. 715 (31 Pac. 19). The vacancy here referred to is evidently intended to apply to a vacancy which shall continue beyond an election and for the remainder of the unexpired term. The unexpired term referred to is the remainder of the six-year term. The clear intention of this section of the constitution is (1) to require that the judges of this court shall be elected whenever there is an election at which they may be elected; (2) that the terms of *judges elected* shall be six years; and (3) that appointive judges shall not serve for a longer time than the next succeeding general election and the qualification of a successor. There is no limitation, either express or implied, upon the legislature to make appointive terms extend to an election. The limitation is that, where a vacancy occurs which extends beyond an election, then an appointee shall hold until the next succeeding general election, and until the qualification of a judge to fill the vacancy. It cannot be said that all vacancies which occur in the membership of this court may be filled by an appointee from the time of the appointment to the next succeeding general election, because a vacancy may occur after the election of a successor to one of the elected judges, and before the expiration of his term, where no election intervenes, which vacancy could be filled by appointment only until the expiration of the term. *State ex rel. Babcock v. Black,* 22 Minn. 336. For example, the regular elective term of Judge REAVIS expires on the second Monday of January, 1903. His successor will be elected regularly in November of this year. No other general election will be held until November, 1904. If Judge REAVIS *should* resign on the day

following the election in November next, and the governor should appoint a person to fill the vacancy occurring by reason of such resignation, it certainly cannot be held that such an appointee may hold office until the next succeeding election, two years hence, and thus deprive the regularly elected judge from taking office on the second Monday in January next succeeding his election. The term of an appointive judge, therefore, is not fixed, except that it cannot extend beyond an election and the qualification of his successor, or to the end of the term. When the term of judges elected was fixed at six years, it was intended thereby to distinguish elected judges from appointed judges, and to fix the terms of elected judges for a definite time, and to limit the terms of appointed judges to the next election. Within that limit the legislative power is complete. It may provide for a term of any length of time up to the succeeding general election. This term is appointive. But if a vacancy is created which extends beyond an election, the provisions of the constitution apply, and the legislature has no authority to change or modify the "terms" therein contained. The act in question does not attempt to change or modify the terms of judges elected. It undertakes to create a vacancy and to terminate the vacancy, at a fixed time before an election can take place, and before an elective term may begin; and this, we hold, may be done, because there is no fixed constitutional appointive term. It is certainly not necessary that a general act be passed, increasing the number of judges for an indefinite time, and that subsequently another act be passed, decreasing this number. What may be done by a legislative body indirectly may be done directly. The act in question is not in conflict with any constitutional term, and in so far as it increased the

number of judges of this court temporarily, was not in conflict with any provision of the constitution.

The writs prayed for will be denied.

Fullerton, Hadley, Dunbar, and White, JJ., concur.

Reavis, C. J. (dissenting). I concur in the conclusion that no vacancy exists in the office of governor, and that a lieutenant governor ought not to be elected this fall. I am unable, however, to assent to the construction given to the statute entitled "An act increasing the number of judges of the supreme court of the state of Washington, and declaring an emergency," Laws 1901, p. 345, in the majority opinion. I feel convinced that sound canons of constitutional interpretation impose the duty of declaring § 2 of this law void. The statute is already set out in the majority opinion. This section adds additional qualifications to the office of judge to those required in the constitution, and defines and limits the duration of terms of the two judges appointed by the governor until the first Tuesday after the first Monday in October, 1902. The legislature has no power to define the term or prescribe the qualification of a judicial officer. This seems clear under the plain provisions of the constitution. If there be one rule set at rest by judicial authority—including, among other courts that have spoken upon the question, this court—it is that when the term, qualifications, salary, or method of election of a judicial officer is prescribed in the constitution, the legislature is incompetent to change, modify or in any manner interfere with such requirements in the organic law. Thus the term cannot be abridged or extended by legislative act. In *State ex rel. Dyer v. Twichell,* 4 Wash. 715 (31 Pac. 19), this court had before it for construction the act of March 3, 1890,

entitled "An act providing for an additional number of superior court judges, and declaring an emergency to exist." Laws 1889-90, p. 346. This law provided for additional superior court judges in several counties, and their appointment by the governor until the ensuing general election in November of the same year. Section 3 provided for the election of two judges in King county, as follows:

"At the general election in 1890, there shall be elected in the county of Spokane one superior judge, and in the county of Pierce two superior judges, and in the county of King two superior judges, for said counties, in addition to the judges now provided for by law in said counties, who shall hold their offices for the term of four years from and after the second Monday in January, 1891."

It will be observed that the section directed the election of the two judges in King county at the election in November, 1890, and fixed their terms for four years after the second Monday in January, 1891. The proceeding before the court was mandamus to compel the election of the successors of these two additional judges at the November election in 1892, and the complaint of the relator was that the legislature had extended the term prescribed for superior court judges in the constitution. The court observed in determining this case:

"On March 3, 1890, the legislature passed an act providing for additional judges in the counties of Spokane, Pierce and King. Sec. 3 of said act provides that 'at the general election in 1890 there shall be elected . . . in the county of King, two superior judges . . . in addition to the judge now provided for by law in said county, who shall hold their offices for the term of four years from and after the second Monday in January, 1890.' Before the enactment of that law there had been but one judge elected for said county of King. He was

elected at the election for the adoption of the constitution in 1889, and, under the provisions of said constitution, his term of office will expire in January next, and his successor must be elected at the coming November election. And if the provisions of the law of March 3, 1890, above quoted, are of force, it is conceded that said successor to the judge elected in 1889 is the only one to be so elected. The contention on the part of the petitioner, however, is that so much of the law above quoted as assumes to fix the term of office of the judges therein provided for is unconstitutional and void. The appellant contends that such provision is not only not opposed to any express provision of the constitution, but is in entire harmony with the letter and spirit thereof. To determine the right of these respective contentions is to determine the controversy at bar. If the constitution has not provided for the terms of additional judges, which might be provided for the courts of the several counties by the legislature, it follows as of course that the legislature has full power to enact in regard thereto. If, on the other hand, the constitution has so provided, such provision must control, and any attempt of the legislature to change or modify the same would be absolutely void, and of no effect. . . . Thus construing it, we are forced to the conclusion that the constitution makers intended that the regular term of all superior court judges should be uniform, and that the regular incumbents of said offices should hold for the same term, not only as to its duration, but also as to the time of its commencing and ending. And we think that the additional judges to be provided by act of the legislature, when so provided, occupied exactly the same relation to the constitution and the term of office therein provided for as did those created by the constitution itself. If the legislature had simply provided for two additional judges for the county of King, and stopped there, the legislation would have been effective. If this is true, it must be because the term of office and other provisions as to salary, etc., were covered by the constitution. The constitution created the office of judge of

the superior court. It provided that a certain number of judges should be elected. It also provided that the legislature might authorize and require the election of an additional number of judges. It does not follow, however, as contended for by appellant, that, because the election of a portion of the judges was authorized by the constitution itself, and another portion thereof by the legislature, that the respective portions bear any other than a common relation to all the provisions of the constitution relating to such officers. The term of office, then, of all the judges must be held to have been provided for in the constitution. . . . If this construction of the clause above referred to is to obtain, it follows that a definite term, ending three years from the second Monday of January, 1890, applicable to all superior court judges, whether provided for in the constitution or by legislation, was fixed in the constitution. If the constitution has thus provided definite terms, it would, of course, follow that the legislature could not change or modify the same."

The language of the court has been cited at considerable length here, because I am impressed with the view that its reasoning and authority should be controlling in the construction of the statute of 1901, *supra,* now before the court. The same care and deliberation was expressed in § 3, art. 4, of the constitution, relating to the terms and qualifications of the supreme judge, as in the section relating to the superior judge; and this is also true of the election of the judges of both courts, and the method of filling vacancies in these offices.

The majority of the court, as I understand, concludes that the legislature cannot alter or modify the terms of the judges *elected,* and has no power to change the method of filling vacancies in the terms prescribed by the constitution; and the authorities cited in the opinion fully sustain the rule. It is then announced:

"If, therefore, the legislature has power to increase the number of judges as occasion or convenience requires, and there is no restriction upon a decrease except below five, it follows that a decrease may be had to this minimum when necessity or occasion requires, of which necessity or occasion the legislature is the exclusive judge."

If this be the correct rule, the fair deduction therefrom is that the framers of the constitution intended to create five constitutional judges with fixed qualifications, duration of terms, and salaries, who should always sit with the court, and additional judges of occasion or necessity may be designated by the legislature in such numbers and for such times as it may deem expedient. It would seem fairly to follow, also, that the legislature might, so far as any express limitation goes, appoint the additional judges for a month, or, as here, eighteen months, or any intervening time between two general elections. Such appointive judges are certainly not filling any vacancies mentioned in the constitution, for it definitely fixes the appointing power of the governor "to vacancies" until the next general election, or, if to the end of the regular term, then that terminates in the successor who is the judge elected at a general election. The constitution, with much particularity and certainty, provides for the election of all judges, and very minutely fixes the power and procedure for filling vacancies. It says:

"If a vacancy occur in the office of a judge of the supreme court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election, and the judge so elected shall hold the office for the remainder of the unexpired term."

It may be thus observed that the appointment by the governor of the two additional judges in the present in-

stance was made under the act of 1901, *supra*, for there
was no vacancy filled, ending with the general election.
But according to the  construction of the court here, the
governor's appointment was made for a full term created
by the legislature.    Then, if the legislature could create
a special term in duration, its power is necessarily
plenary to appoint judges itself, instead of authorizing
appointment by the governor, for they are legislative
officers, and there would seem to be no express restriction
upon adding qualifications for the judges not mentioned
in the constitution;   that is, one could be from each domi-
nant party, or any other qualification not expressly in-
hibited which the legislature might deem expedient, as
that some of the judges should be socialists, and the others
democrats or republicans.    It is plain that these offices are
elective.    The vacancy is an emergency—an unforeseen
event—and must always occur at the time in an office then
in existence; and it is only an interval in the incumbency
of the existing office, and cannot be a vacancy if it envel-
opes the whole duration of the office.    Somewhere in the
term, in the commencement, during its course, or before
its ending, there must be an elected judge.    No executive
appointment can extend beyond the next general election.
Thus Judge WHITE was appointed by Governor Rogers
to the vacancy occasioned by the resignation of Judge
GORDON in June, 1900, but he was thereafter elected to
fill the unexpired vacancy in November, 1900.    Section
5, art. 4, of the constitution, relating to vacancies in the
office of superior court judge, is in identical words with
the requirement for  filling the vacancies in this court. In
*State ex rel. Linn v. Millett*, 20 Wash. 221 (54 Pac.
1124), the question of filling the vacancy of superior
court judge was determined.    It was there said:

"The commission of the governor only entitles the holder to retain office until his successor is elected and qualified, and the word 'remainder' as found in that section relates to the term existing at the date of the election, not to a term beginning some months later.  .  .  . Counsel for the respondent has urged upon the consideration of the court the importance of having a fixed and certain time at which elected officers shall qualify, and argues that great public inconvenience might follow if it were held that a judge elected to fill a vacancy might qualify any time after the result of the election is declared. .  .  .  However, the constitution plainly limits the right of the appointed judge to hold until the election and qualification of his successor at the next succeeding general election."

It seems to be suggested that the constitution is a limitation only upon legislative power, and that the express limitation must be found to inhibit the power of the legislature, at its discretion, to create and define the tenure of appointive judges, while admitting it cannot interfere with the constitutional office of the original five judges. However, there is no express limitation in words on the legislative power to diminish the number of the judges below five. There is in words no such limitation as to the diminution of salaries, but all here concede such limitations exist by implication. It could hardly be success- fully maintained that the legislature could increase the court if the power to increase had not been conferred. I understand the correct rule of construction to be that the mandate "thou shalt," when used in directing the organization of the court and fixing the number of its members, also implies negatively the inhibition "thou shalt not" add any other number, and it therefore required power affirmatively given to increase the number after the first organization. The sovereign powers of the state were de-

liberately distributed in framing the constitution into legislative, executive, and judicial departments. In the supreme and superior courts were reposed the judicial functions, and their organization, powers, qualifications, and terms of the judges, are defined. The independence of the court is guarded in all cases by fixed tenures of office and salaries during the terms. The convention, when vesting such functions in courts, had in view as well the future as the present of the state, and foresaw its large growth and development, and the necessity that would arise for increasing the number of judges for the courts, and it provided for such increase from "time to time" by the legislature. But it plainly intended to preserve the harmony and the unity of this court in the tenure and qualifications of its judges. I conclude that § 2 of the act of 1901, *supra,* and the same idea wherever expressed elsewhere in the act, is a departure from that intention, and that the plain mandate of the constitution carries with it the implied prohibition upon the creation of legislative offices such as the act of 1901 does if all its provisions are held valid.

However, the void section of this statute may be eliminated, and the law, in its substance, be valid. The title is perfect: "An act increasing the number of judges of the supreme court, and declaring an emergency." This is clearly within the authority of the constitution. The first section declares that after the enactment the court shall consist of seven members. Here the limitation imposed upon the terms of the judges and the added qualifications were beyond the power of the legislature. In *State ex rel. Dyer v. Twichell, supra,*—the case where the legislature had extended the term of superior judges,—the court declared that such interference was beyond the competency

23—29 Wash.

of the legislature, but held that portion of the statute within its competency valid, and gave effect to the law; observing that the power of the legislature was limited to providing for the increase of the number of judges. So in this case the legislature was only competent to provide the number of judges to be added to the court. It was unnecessary and was immaterial that the act provided for their appointment by the governor, for the constitution had already designated the method of filling the vacancies by the governor, and so it may be said of the specifications of the salaries. I understand the true rule of construction, approved by the great weight of, if not by unanimous, authority, is that if the valid exercise of legislative power can be separated from the void, and is susceptible of operation, the valid will be enforced. A few of such authorities may be mentioned here: Cooley, Constitutional Limitations (4th ed.), pp. 214-216; *Sinking Fund Commissioners v. George,* 104 Ky. 260 (47 S. W. 779, 84 Am. St. Rep. 454); *State ex rel. Attorney General v. Brewster,* 44 Ohio St. 589 (9 N. E. 849); *State ex rel. Goodin v. Thoman,* 10 Kan. 191; *Griebel v. State ex rel. Niezer,* 111 Ind. 369 (12 N. E. 700). In the case of *State ex rel. Law v. Blend,* 121 Ind. 514 (23 N. E. 511, 16 Am. St. Rep. 411), the rule is admirably stated as follows:

"It is equally well settled that when a part of a statute is unconstitutional, if by striking from the act all that part which is void, that which is left is complete in itself, sensible, capable of being executed and wholly independent of that which is rejected, the courts will reject that which is unconstitutional and enforce the remainder."

I conclude that the statute here, with the void features eliminated, is clear and sensible, and should be enforced; that there is a valid increase of this court by the addition of two constitutional judges; that the two members ap-

pointed by Governor Rogers are filling vacancies contemplated by the constitution; and that their successors to fill the unexpired terms ought to be elected at the general election in November, and the writ should issue for that purpose.

ANDERS, J.—I concur in the foregoing opinion of Chief Justice REAVIS.