[No. 4833. Decided May 3, 1904.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK OLESON, *Appellant.*[1]

CRIMINAL LAW—RECEIVING DEPOSIT AFTER INSOLVENCY OF BANK—DEFENSES—INDIVIDUAL LIABILITY OF OFFICER. Const., art. 12, § 12, making officers of a bank individually responsible for receiving a deposit after knowledge that the bank was insolvent, does not preclude the legislature from passing a law making them criminally liable therefor.

[1]Reported in 76 Pac. 686.

SAME—INFORMATION—VARIANCE—NAME OF DEPOSITOR—CORPORA-
TION SUCCEEDING PARTNERSHIP—IDEM SONANS. Under an infor-
mation against a bank officer for receiving, after the insolvency
of the bank, a deposit from the B. G. Co., a corporation, it is
a fatal variance to prove a deposit by B. & S., a copartnership,
consisting of the incorporators of the B. G. Co., which was not
in existence at the time alleged, and the fact that the corpora-
tion was the successor of the copartnership .does not bring the
two names within the principle of *idem sonans*.

SAME—NAME OF DEPOSITOR NECESSARY TO IDENTIFY DEPOSIT.
The fact that the bank was insolvent at a particular time, and
that a deposit of $113 was made at that time, does not identify
the act of such deposit with certainty, without the name of the
depositor, within the provision of Bal. Code, § 6846, respecting
material variances.

Appeal from a judgment of the superior court for What-
com county, Neterer, J., entered December 19, 1902, upon
a trial and conviction of the crime of receiving a deposit
in an insolvent bank. Reversed.

*Harry Fairchild, Will H. Morris,* and *Morris & South-
ard,* for appellant.

*Parker Ellis, A. E. Mead,* and *John B. Hart,* for re-
spondent.

Mount, J.—Appellant was convicted by a jury in the
court below, under an information charging him with
receiving a certain deposit in an insolvent bank of which
he was cashier, knowing the bank to be insolvent. Ap-
pellant insists, first, that the statute under which the
information was filed is unconstitutional, because the
constitution in terms provides that an officer receiving
such deposit shall be individually responsible therefor
and, therefore, by implication, prevents the legislature
from making the act criminal. The statute is as follows:

"Any president, director, manager, cashier or other
officer of any banking institution who shall receive or
assent to the reception of deposits after he shall have

knowledge of the fact that such banking institution is insolvent or in failing circumstances, shall be guilty of felony and punished as hereinafter provided." § 7121, Bal. Code.

The constitution provides as follows:

"Any president, director, manager, cashier, or other officer of any banking institution, who shall receive or assent to the reception of deposits after he shall have knowledge of the fact that such banking institution is insolvent or in failing circumstances, shall be individually responsible for such deposits so received." § 12, art. 12, of the constitution.

This court, in *State ex rel. Murphy v. McBride,* 29 Wash. 335, 70 Pac. 25, said:

"The constitution of this state is a limitation upon the powers of the legislature, and not a grant of power. Hence, before an act of the legislature may be declared unconstitutional, it must appear that the act is in conflict with some express provision of the constitution which prohibits the act or parts of the act complained of."

See, also, Cooley, Const. Lim. (7th ed.), pp. 126, 236, 242. There is no contention that the provision of the constitution quoted expressly prohibits the legislature from making the reception of such deposits by an officer of the bank criminal; but it is argued that, because the constitution provides that the officer shall be "individually responsible for such deposits so received," there is an implication that he shall not be made criminally liable. If the constitution, by the term "individually responsible," means that such officer shall be liable civilly, we think it does not follow, as a *necessary implication,* that he shall be only liable civilly; and therefore the legislature may make him liable both civilly and criminally. The demurrer was therefore properly denied.

Appellant next insists that there was a fatal variance between the essential allegations of the information and the proof. The information is as follows, omitting the caption:

"In the name and by the authority of the State of Washington, I, A. E. Mead, prosecuting attorney of Whatcom county, state of Washington, come now here and give the court to understand and be informed, and on oath do accuse Frank Oleson of the crime of larceny, committed as follows: That for more than six months immediately preceding the 27th day of February, A. D. 1901, the Scandinavian-American Bank was a banking corporation organized and existing as such and doing business in the city of New Whatcom, Whatcom county, Washington, and on the 27th day of February, A. D. 1901, and for more than six months immediately preceding said date did during said time conduct a general banking business therein by receiving money for deposit and otherwise in the said city of Whatcom, Whatcom county, Washington; that on the 27th day of February, A. D. 1901, during all of the times aforesaid, the said Scandinavian-American Bank, a banking corporation as aforesaid, was insolvent and in failing circumstances; that on, to wit, the said 27th day of February, A. D. 1901, and for the six months immediately prior thereto, one Frank Oleson was the cashier of said banking institution and as such cashier of such banking institution did, on the 27th day of February, A. D. 1901, receive and assent to the reception of a certain sum of money, to wit, the sum of one hundred and thirteen dollars ($113), as a deposit in said bank, from the Byron Grocery Company, a corporation, and said Frank Oleson then and there at all times well knowing that the said Scandinavian-American Bank, said banking institution, was then insolvent, and in failing circumstances, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the state of Washington."

The undisputed evidence introduced on the part of the state shows, that the deposit alleged in the information

was made for a partnership composed of H. C. Byron,
Will Shumway and X. S. Byron, known as Byron &
Shumway, by their bookkeeper, John H. Lloyd; that the
Byron Grocery Company, a corporation, was not in ex-
istence at that time and never did any business with the
said bank.   The evidence also shows that all the partners
in the firm of Byron & Shumway were the incorporators
of the Byron Grocery Company, a corporation, which was
organized some two or three weeks after the alleged de-
posit.   The deposit slip, which was introduced in evidence,
is as follows:

"Deposited by Byron & Shumway with the Scandi-
navian-American Bank, New Whatcom, Washington, Feb-
ruary 27, 1901:

          "Gold  ..................... 70
          "Silver  ...... .............. 13
          "Currency  ................... 10
          "Checks  ................... 20
                                        ————
                                        "113"

When the state had introduced this proof and rested,
the appellant moved the court for an instructed verdict,
upon the ground of a material variance.   This motion
was denied.   There can be no doubt that this proof is a
variance from the allegation, which charged the deposit
to have been made by the Byron Grocery Company, a
corporation, for the corporation is an entirely different
and distinct person from Byron & Shumway, a copartner-
ship.   The rule is well settled that an information charg-
ing larceny from a particular person is not sustained by
proof of larceny of the same property from another person,
or from a person by another name, unless the names are
*idem sonans.*   Larceny and Kindred Offenses, by Rapalje,
§§ 241, 242, and cases cited; *State v. Van Cleve,* 5 Wash.

642, 32 Pac. 461. The fact that the Byron Grocery Company, a corporation, is the successor of Byron & Shumway, does not bring the two names within the rule of *idem sonans,* because they are, in fact and in law, two distinct and different persons, notwithstanding that the stockholders of the corporation may in fact be identical with the partners in a partnership which was the predecessor in interest of the property of the corporation. Respondent contends, however, that the variance is immaterial, by reason of the following provision of the code:

"When the crime involves the commission of or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured is not material." §6846, Bal. Code.

And it is argued that, because the date and amount of the deposit are described with certainty, these facts are sufficient to identify the act. The fact that the bank was insolvent or in failing circumstances at the time of the deposit is, no doubt, material, but the precise date of the deposit, so long as it was within the time when the bank was in failing circumstances, is not a material ingredient in the crime. § 6845, Bal. Code.

The question then is, do the facts that the bank was insolvent at a particular time, and that a deposit of $113 was made at that time, identify the act of such deposit with certainty. It seems clear that it does not do so. The first and most important inquiry to identify such an act would naturally be, who made the deposit? Without this fact, a person charged might find upon his books different deposits for the same amount upon the same day. It would then be impossible to identify the act charged. Banks, as a rule, receive many deposits on the same day, and frequently, no doubt, in the same amount.

The date and amount of a deposit are material to identify it, but these items alone could not be relied upon to identify it with certainty. The name of the depositor is equally as important as either the date or the amount, if not more so. All three of the items, particularly the amount and name of the depositor, are necessary to identify the deposit with certainty. The statute, therefore, does not apply to the facts in this case.

Furthermore, the facts in this case illustrate, as clearly as any that could be supposed, the danger of permitting misleading allegations intended to identify the act charged. The information alleges that the defendant, on February 27, 1901, knowing the bank to be insolvent, received and assented to the reception of "$113 as a deposit in said bank from the Byron Grocery Company, a corporation." The pleader evidently supposed that the name of the depositor was necessary to an identification of·the deposit and, therefore, alleged that the deposit was made by the Byron Grocery Company, a corporation. The defendant, from his personal knowledge or from an examination of the books of the bank, knew that no such person had made a deposit in said bank, and had a right to rely upon this fact as a complete defense. He was certainly not required to prepare to meet some other accusation. This allega-. tion, even if immaterial, would have the effect to mislead the accused, because he had a right to suppose that the state would attempt to prove the charge as made. If the prosecution may be permitted to allege that the deposit was made by one person, and then, at the trial, prove that it was made by another and entirely different person, there is no virtue in the constitutional provision that an accused person shall have a right to know the nature and *cause* of the accusation against him. § 22, art. 1, of the constitution. And the state might, in prosecutions of this kind,

entirely mislead accused persons by alleging that such deposits were made by one person, when they were in fact made by another. In the language of *State v. Gifford,* 19 Wash. 464, 53 Pac. 709, "we do not think it was the intention of the legislature, in the passage of this law, to set a trap for the feet of defendants."

The appellant's motion for a directed verdict should have been granted. The judgment is therefore reversed.

FULLERTON, C. J., and DUNBAR, ANDERS, and HADLEY, JJ., concur.