[No. 13802.  *En Banc.*  October 31, 1916.]

THE STATE OF WASHINGTON, *on the Relation of Edward N. Sears et al., Appellant,* v. MITCHELL GILLIAM, *as Judge of the Superior Court for King County, Respondent.*[1]

JUDGES—VACANCY—APPOINTMENT—TERM—ELECTION. Under Const., art. 4, § 5, providing that, if a vacancy occurs in the office of a judge of the superior court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, the election to be at the next general election and the judge to hold office for the remainder of the unexpired term, an appointee's term ends at the election or when the judge elected to fill the vacancy has qualified.

ELECTIONS—PRIMARY ELECTIONS—NOMINATIONS—OFFICE—JUDGES— SHORT TERM—DESIGNATION ON BALLOT—STICKERS—STATUTES. The primary election law being an exclusive means of selecting candidates and not an essential part of the general election law, and the auditor not being required to prepare a ballot for unexpired terms unless there is a filing therefor, a person cannot be nominated for an unexpired term of judge of the superior court by the use of stickers or the writing of names on the primary election ballot, where there has been no filing for such unexpired term and hence no notice to electors of such an office to be filled, as contemplated by Rem. 1915 Code, § 4843, requiring publication thereof; especially in view of Id., § 4842, which provides that, where there is a vacancy to be filled, candidates may announce themselves for either the long or short term and the ballots "shall be arranged accordingly;" since no elector may assume to use the ballot for the selection of a candidate for an office not designated on the ballot and for which no voting arrangement is made; and stickers may be used under Id., §4843, only for offices designated on the ballot.

Certiorari to review a judgment of the superior court for King county, Gilliam, J., entered October 18, 1916, denying a writ of mandamus to compel the placing of relators' names upon the general election ballots as nominees for the office of superior judge.  Affirmed.

*Edward N. Sears* and *Richard Gowan,* for relators.

*Alfred H. Lundin, A. M. Brackett, Wilmon Tucker, R. C. Saunders, Geo. H. Rummens,* and *C. K. Poe,* for respondent.

[1]Reported in 160 Pac. 757.

CHADWICK, J.—On the second Monday in January, 1915, Honorable John E. Humphries qualified as a superior judge for King county for the term ending the second Monday in January, 1917. On or about May 15th, 1915, Judge Humphries died, and John S. Jurey was appointed by the governor of the state to fill the vacancy. Judge Jurey qualified and has ever since acted as such superior judge.

Provision is made in the constitution for the appointment of a person to fill a vacancy occurring in the office of superior judge, and fixing the term of such appointed officer, which is until the next general election and until his successor is elected and qualified. At the 1907 session of the legislature (Laws 1907, p. 457), the direct primary law was adopted as the lawful method of nominating candidates for public office. In *State ex rel. Zent v. Nichols*, 50 Wash. 508, 97 Pac. 728, the court recognized that, under this state of the law, "there was indeed a short and a long term for which a judge might have been nominated. . . ."

The primary election for this year was held on the 8th day of September. There were no filings of candidates for the so-called short term, or the interregnum between the general election to be held on the 7th day of November, 1916, and the 8th day of January, 1917, at which time all persons elected at a general election for a full term are competent to qualify. Const., art. 4, § 5. Nevertheless, a certain number of the electors of the county of King, by writing the name of the office and term intervening between the election and the time when a regular term will begin, and the names of these relators, voted for these relators for the office of superior judge for the short term. Alleging themselves to be candidates regularly nominated as such, they sought remedy in the lower court by way of mandamus to compel the county auditor to place their names upon the general election ballot, and to give notice of such election for the time provided by law. The writ was denied, and the case is brought here for

review. A right conclusion rests upon a construction of the constitution.

"If a vacancy occurs in the office of judge of the superior court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall be at the next succeeding general election, and the judge so elected shall hold office for the remainder of the unexpired term." Const., art. 4, § 5.

This section of the constitution was construed in *State ex rel. Linn v. Millett*, 20 Wash. 221, 54 Pac. 1124. Honorable Charles Ayer was elected at the general election held in November, 1896, to the office of superior judge for Thurston county for the full term beginning the following January. He qualified and continued to discharge the duties of his office until his death, which occurred in March, 1898—a time, as will be noticed, prior to the regular biennial election intervening between the commencement of the term of his office and its ending, which, under the constitution, would be in January, 1901. Honorable Byron Millett was appointed to fill the vacancy. He was commissioned to hold the office "until the next general election." This was the limit of the governor's authority. At the next general election (inasmuch as we are treating an office having a term of four years, we shall call the intervening election a biennial election), Linn received a majority of the votes.

The question arose as to whether he was entitled to the office immediately following a declaration of the result of the election or whether his right to fill the "remainder of the unexpired term" began the second Monday of the succeeding January. Linn qualified and demanded the office. Millett refused to vacate, and the issues, as just stated, were submitted to the supreme court upon Linn's application for a writ of *quo warranto* to try title to the office. The decision of the court was rested squarely upon that part of art. 4, § 5, which we have quoted. After stating the issue:

"The respondent's position is that since, under the consti-
tution, the different state officers are required to qualify on
the second Monday in January succeeding their election, the
relator in this case is not entitled to take office until such
time; while the relator's position is that having been elected
to fill an unexpired term, he is entitled to qualify and take
office as soon as the result of such election has been declared."

The court said:

"We think the relator's position is well taken, and that the
respondent's position cannot be maintained.   The provision
of the constitution which fixes the second Monday in January
succeeding their election as the time when the different state
officers, including superior judges, shall qualify, relates ex-
clusively to original terms or terms beginning in January fol-
lowing the election; while the provision of § 5, art. 4, *supra*,
which controls this case, applies only to cases where a vacancy
exists, and the party elected is to serve the remainder of a
term then current.   The commission of the governor only en-
titles the holder to retain office until his successor is elected
and qualified, and the word "remainder," as found in that
section, relates to the term existing at the date of the elec-
tion, not to a term beginning some months later.   We have
in this state biennial elections.   If respondent's position is
correct, and a vacancy should occur at any time within two
years prior to the last election preceding the commencement
of a new term, the provision of the constitution referred to,
which requires a successor to be elected at the next ensuing
election, would be meaningless, because, if he could not qualify
until the January following his election, it would follow that
the term would have already expired, a condition which we
think is not contemplated by any fair construction of the
constitution, and certainly not within the letter of it."

A related question was considered by the court in *State
ex rel. Murphy v. McBride*, 29 Wash. 335, 70 Pac. 25.   In
the discussion following, the court held that the provision of
the constitution fixing terms applied only to judges who had
been elected; that

"There is no limitation, either express or implied, upon the
legislature to make appointive terms extend to an election.
The limitation is that, where a vacancy occurs which extends

beyond an election, then an appointee shall hold until the next succeeding general. election, and until the qualification of a judge to fill the vacancy.  .  .  .

"The term of an appointive judge, therefore, is not fixed, except that it cannot extend beyond an election and the qualification of his successor, or to the end of the term. When the term of judges elected was fixed at six years, it was intended thereby to distinguish elected judges from appointed judges, and to fix the terms of elected judges for a definite time, and to limit the terms of appointed judges to the next election. Within that limit the legislative power is complete. It may provide for a term of any length of time up to the succeeding general election. This term is appointive. But if a vacancy is created which extends beyond an election, the provisions of the constitution apply, and the legislature has no authority to change or modify the 'terms' therein contained. The act in question does not attempt to change or modify the terms of judges elected. It undertakes to create a vacancy and to terminate the vacancy, at a fixed time before an election can take place, and before an elective term may begin; and this, we hold, may be done, because there is no fixed constitutional appointive term."

It is plain, therefore, that if a person is appointed to fill a vacancy occurring in the office of superior judge before the next succeeding biennial election, his term is limited to the next general election, and the one elected to fill the "remainder of the unexpired term" is entitled to the office from the time of his election and qualification without reference to the time fixed for the beginning of regular terms. On the other hand, it is plain that, if a vacancy occurs between the biennial election and a general election when superior judges are to be selected (*State ex rel. Dyer v. Twichell,* 4 Wash. 715, 31 Pac. 19), the one holding by appointment holds only until "the election and qualification of a judge to fill the vacancy .  .  . which election shall be at the next succeeding general election."

Judge Jurey was appointed after the last biennial election, and before the oncoming general election; consequently his term, as appointee, ends at the general election, or when

a judge is elected to fill the vacancy and has qualified, or, as it is further and more exactly stated in the constitution, for the remainder of the unexpired term; that is, the term for which Judge Humphries was originally elected. Unless "a person" is elected to fill the remainder of the term—that which we call the short term—Judge Jurey will continue in office until the one elected can qualify for the regular term, which will be in January, 1917.

The remaining question is whether the relators have been nominated, and can insist upon being candidates, for the unexpired term, the time elapsing between November 7, 1916, and the second Monday in January, 1917.

There were no filings for the office of superior judge for this short term. Relators claim only as the recipients of certain votes cast at the primary election. That they may not now insist upon the right to go upon the general election ballot seems evident for the reasons that we shall proceed to enumerate. The direct primary law was adopted as an efficient and, except as qualified therein, an exclusive means of selecting candidates for the offices created by the constitution or defined by statute. Its only purpose ". . . was to select candidates whose names shall appear on the official ballot."

"It is not the purpose of the primary election law to elect officers. The purpose is to select candidates for office to be voted for at the general election. . . . It is a "process of selection to determine the candidates whose names shall appear upon the ballot." *State ex rel. Zent v. Nichols, supra.*

By the same authority, it is held that the primary election law is not an essential part of the general election law. Hence it follows that no duty rests upon the county auditor to prepare a ballot for unexpired terms unless there is a filing for such unexpired term. That the legislature had in mind that a nomination for an unexpired term depended upon a filing, and that it should not be left to the concern of the voter in the absence of a filing, is sustained in a degree by reference

to § 1 (Laws 1911, p. 489; Rem. 1915 Code, § 4842), of the primary law, which provides, in terms, that, where there is a vacancy in the office of judge, candidates may announce themselves for either the long or the short term, "and the ballots shall be arranged accordingly," being mindful, as we must presume, that if there were no announcements, the vacant office would not be referred to on the ballot and, as the constitution says, the appointed judge would hold over until his successor was elected and qualified. The ballots are "arranged accordingly," that is, describing constitutional and statutory offices to be filled for full terms and such unexpired terms as may have been the subject of announcement. It follows that no elector may assume to use the ballot for the selection of a candidate for an office not designated upon the ballot and for which no voting arrangement is made. We are further sustained in our thought that this must be so by a consideration of the whole act, especially § 8 (Laws 1915, p. 181; Rem. 1915 Code, § 4843).

The law seems to contemplate that the people shall have full notice of the primary election and of the offices to be filled; that the auditor shall "publish the names of all persons for whom nomination papers have been filed;" that "the names of all candidates for the office of supreme and superior court judges shall be published and posted in a separate list without party designation." The purpose of the primary law is not to create offices or to fill them; only to select candidates to be voted for at the general election. It emphasizes the personal equation and seeks, by positive provisions, to give notice of the names of men who aspire to office, rather than to emphasize the office itself. It is true that names may be written in, or stickers may be employed (Laws 1915, p. 181, § 8), but this is so only where the primary ballot calls for the selection of a candidate for an office or an unexpired term named in the ballot and of which the public has had notice.

If any one aspires to fill an unexpired term existing be-
cause of a previous vacancy, he is not without remedy. He
may file for the unexpired term, and compel, by appropriate
proceedings, the submission of his candidacy. He cannot,
without previous announcement, compel his nomination un-
less the people have had notice that there is an office to be
filled.

It follows, there being no announcements of candidacy, and
therefore no notice to the public, that no one will be elected
to fill the unexpired term for which Judge Humphries was
elected and of which Judge Jurey is now the incumbent. Nor
does it follow that the office will be vacant. By the terms of
the constitution, the incumbent will hold the Humphries' term
until a successor to that term is elected and qualified. There
being no candidates selected in the manner provided by law,
and the time having passed when there can be, the obvious
conclusion is that there is no vacancy to fill, for, by the
fundamental law, Judge Jurey may, if he so will, continue
to discharge the office until the one who may be elected to
succeed to the full term is able to qualify, which will be on
the second Monday of January, 1917.

It may be that what we have said may seem to be out of
time with the act of 1911 (Laws 1911, p. 614, § 2; Rem.
1915 Code, § 9043-1), the constitutional provisions with ref-
erence to supreme and superior court judges being identical.
It is there provided:

"A person elected judge of the supreme court to fill a
vacancy for an unexpired term shall not qualify for office
until the second Monday in January succeeding his election,"

indicating that, if a person was elected for the short term,
he could not qualify until the succeeding January; that a
person being elected, the term of the appointee would, for
that reason, end; and that a vacancy would result notwith-
standing an election for the unexpired term.

It would not follow. If such were the law, the one elected
might be called upon to vacate the office on the day fixed for

his qualification in favor of one who had been elected for the regular term, being on the second Monday in January succeeding his (the candidate for the short term) election. If this act be treated as a limitation within which a judge, who has been elected to fill a vacancy, shall qualify, it might be sustained, but if it be taken as a legislative construction of the constitution, it cannot be, for the right to the unexpired term after election comes from the constitution. The term is continuing, and cannot be limited or abridged by either the legislature or the court. The legislature cannot limit the term of an officer duly elected to an office having a term defined in the constitution. *State ex rel. Murphy v. McBride, supra.*

Much of the argument was given over to the question whether the election to fill a vacancy occurring in the office of superior judge was general or special. With that, we are not free to concern ourselves. The constitution provides that all such elections shall be at the next succeeding general election. It does not say a special election shall be held at the time and place general elections are held, but is careful, as it seems to us, to exclude the thought that judicial officers can be voted for at any other than general elections. Otherwise, it would have provided for a special election to be held immediately upon the happening of a vacancy, rather than give the power of appointment to the governor pending such election.

We hold that the relators are not entitled to have their names printed on the official ballot, and that there is not and, from the failure to nominate in the manner provided by law, cannot be, a vacancy for the unexpired portion of Judge Humphries' term.

MORRIS, C. J., MOUNT, PARKER, MAIN, HOLCOMB, ELLIS, and FULLERTON, JJ., concur.