[No. 25168.   Department One.   June 25, 1934.]

THE STATE OF WASHINGTON, *on the Relation of James T. Lawler et al., Respondent,* v. GEORGE A. GRANT, *as Auditor for King County, Appellant.*[1]

[1]Reported in 34 P. (2d) 355.

*Robert M. Burgunder, Arthur M. Hare,* and *Theodore S. Turner,* for appellant.

*Evans & McLaren,* for relators.

MITCHELL, J.—Pursuant to chapter 63, Laws of 1933, Ex. Ses., p. 222 (Rem. 1934 Sup., § 11045-1a *et seq.),* the governor, in February, 1934, appointed James T. Lawler and Roger J. Meakim additional judges for the superior court for King county, which county already had thirteen judges. The two appointees qualified in February, since which time they have served as such judges.

On April 3, 1934, they filed in the superior court for King county joint applications for a writ of mandamus to compel George A. Grant, as county auditor, to draw warrants in their favor on the treasurer of the county for services rendered in February and March. The complaint alleged the appointment, qualification and services of each as judge of the superior court, and the refusal of the county auditor, upon demand, to issue salary warrants to which they were entitled. It was further alleged that a fund had been provided by the county commissioners for salary warrants for the judges of the superior court, which at that time had not been wholly expended.

The county auditor demurred to the complaint on all the statutory grounds, and at the same time filed an answer admitting the appointment, qualification and services of the applicants, as alleged in their complaint, and that demand for salary warrants had been made by them and refused by the county auditor. Other allegations of the complaint were denied. It was further alleged, by way of affirmative defense, in substance, that the county commissioners had already determined the final budget for the superior court for that county for the fiscal year 1934, as follows, so far as here material:

"Judges (13 at $3,000.00) ......... $39,000.00
"Court Commissioner ............ 3,600.00
"Chief Court stenographer ....... 1,890.00
"Stenographers (3 at $1,620.00)... 4,860.00
"Bailiffs (18 at $1,500.00) ........ 27,000.00
"Jury Commission .............. 1,800.00

"Total salaries and wages..... $78,150.00"

The affirmative defense further alleged that, according to the budget, the salary pay rolls had been properly submitted for the thirteen judges, the number specified in the budget, which pay rolls had been approved and for which he, as county auditor, drew and issued salary warrants; that the salary lists for relators for February and March have not been approved by the board of county commissioners; that respondent is without power or authority to act in any way whatever in regard to the drawing and issuance of warrants to the relators; and that the board of county commissioners has not declared the existence of any emergency by reason of the two additional judgeships, nor made any provision in the current budget for funds to pay the salaries of relators.

Upon presenting the matter to the superior court,

judgment was entered on the pleadings, in favor of the relators, that the county auditor issue and deliver to each of them salary warrants for his services for February and March (the amounts being specified) and for succeeding months as services were rendered, and that the warrants be so drawn as to be payable by the county treasurer out of the salary fund for the county. The county auditor has appealed.

█ The portion of the judges' salary to be paid by the county in King county, which is a class "A" county, is $3,000 per year, payable $250 per month. Appellant contends that the county commissioners, and not the county auditor, should provide funds for the salaries of the two additional judges; that the auditor has no power to issue warrants of the kind in question, and that the demurrer to the complaint should have been sustained. In our opinion, the county commissioners, through the budget, have provided means in the proper fund for the payment of the salary warrants sued for.

More precisely, the contention of the appellant is that the county budget for the current year, adopted prior to the appointment of the additional judges, makes no provision for their salaries; that the auditor has no right to issue warrants for items not in the budget (except in the case of orders of court and emergencies declared by the commissioners), and hence the relators cannot be paid until, upon application made by them to the county commissioners, an emergency appropriation is made according to the provisions of the county budget act. That is, the item of $39,000 for judges' salaries, in the budget already adopted, can be used only for meeting the salaries of the thirteen judges holding office at the date of the adoption of the budget.

Suppose, however, that, upon these two judges taking office in February, two or more of the thirteen judges

had resigned and their offices continued vacant, would the unused portion of the thirty-nine thousand dollars that otherwise would have been applied to pay the salaries of the judges who resigned be available to pay these two new judges, or would the so-called emergency as to the new judges still exist? Clearly, in our opinion, it would be available for the new judges, just as it is already, because it is a fund for that purpose.

The argument of the appellant assumes, without justification, that the item of thirty-nine thousand dollars is personal to the thirteen judges. With that contention, we cannot agree. From month to month, as warrants are drawn and delivered to pay the judges' salaries, then and to that extent only is there an appropriation of a part of the thirty-nine thousand dollars to the individual, personal benefit or use of the thirteen judges. Any one or all of the thirteen judges cannot assign any portion or all of the thirty-nine thousand dollars, nor any interest in it. It is not an appropriation, but only a public fund created and established to pay the salaries of those who as judges of the superior court for King county render services during the period covered by the budget.

Manifestly, there is sufficient in the fund to take care of the salaries of all fifteen of the judges, for many months at least, during which time all of them may look to the fund, equally and alike, for their pay; and upon the approach of an apparent insufficiency of money in the fund for that purpose, the county commissioners can and will then take care of the situation as an emergency, for, as appellant says in his brief, "the budget act makes adequate provision for every conceivable demand."

In this consideration and discussion of the county budget law, we view it with respect to burdens imposed

upon it by additional offices created by, and the salaries of which are fixed by, the legislature, and not from the standpoint of the power of the county commissioners to provide help, if needed, for county officers, such help and compensation being under the control of the county commissioners, as provided in Rem. Rev. Stat., § 4200-5, as follows:

"In all cases where the duties of any officer are greater than can be performed by the person elected to fill the same, said officer may employ, with the consent of the county commissioners, the necessary help, who shall receive such compensation as shall be fixed by the board of county commissioners."

█ Nor are the county commissioners or the board necessary parties to this action. They have no power or discretion with regard to the amount of payments or when they shall be made—both being fixed by the legislature—and the fund out of which payments shall be made and against which the judgment in this case runs has been provided already by the board. There is nothing that the board or its members can or are required to do.

Rem. Rev. Stat., § 10967, reads:

"The county auditor of each county shall draw his warrant on the treasurer of such county on the first Monday of each month for the amount of salary due for the previous month from such county to the judge of the superior court thereof, and said warrant shall be paid by said treasurer *out of the salary fund of said county.*" (Italics ours.)

█ Nor does such a claim have to be submitted to the county commissioners—approval would add nothing, rejection would be unavailing. Why submit such a claim to the county commissioners as a necessary prerequisite to mandamus proceedings? No discretion

is lodged in the board with respect to such claim. Subdivision 5, § 4056, Rem. Rev. Stat., defining the powers and duties of the board, authorizes and requires the board "to allow all accounts legally chargeable against the county *not otherwise provided for.*" A judge's salary, to the extent it is chargeable against the county, is otherwise provided for. It is made definite and certain as to amount and time of payment by the legislature, and is specifically provided for by the statute, just above quoted, to the effect that the county auditor shall draw his warrant on the county treasurer on the first Monday of each month for the judge's salary due for the preceding month. See, also, 38 C. J., Mandamus, § 308, p. 715.

The situation is similar, in principle, to that in *State ex rel. Dudley v. Daggett*, 28 Wash. 1, 68 Pac. 340, which was a proceeding in mandamus brought on the relation of Dudley against the comptroller of the city of Spokane to compel the drawing and delivery of a monthly payment for the salary due the relator as corporation counsel. The decision was in favor of the relator. Among other things, the court said:

"Respondent is, and has been since the 17th day of May, 1901, the comptroller of the city of Spokane. By ordinance it is made his duty, as city comptroller, to certify pay rolls for official salaries fixed by charter or ordinance, and to pay such salaries by pay checks issued by him upon the proper fund of the city treasury. The charter further provides that the salary of corporation counsel shall be paid in warrants at the end of each calendar month. The appellant duly demanded of the respondent that he perform these duties, by certifying to a pay roll showing appellant to have been corporation counsel for the month of May, 1901, and making and delivering to appellant a pay check for the salary for that month. This the respondent has refused to do, . . ."

The propriety of the remedy by mandamus was sustained in that case, in reliance on the statute on mandamus and on Merrill on Mandamus, § 136, and High, Extraordinary Legal Remedies (3rd ed.), § 351. The quotation from Merrill on Mandamus, § 136, contains a statement pertinent to a case like the present one, as follows:

"This writ is the appropriate remedy to compel a municipal corporation, or an officer thereof, to audit the account of a public officer for his salary, *or* to draw a warrant therefor, or to pay such a warrant. It is considered that it would be a great hardship to compel a public officer to bring suit for his salary. When such salary is fixed by law, it is not necessary to audit it, since the auditing officers have no discretion to allow or reject it." (Italics ours.)

Further, upon this same subject, the court stated:

"It is next objected that the performance of the duty imposed upon the respondent in this case requires the exercise of judgment and discretion, and cannot, therefore, be controlled by a proceeding of this nature. The salary being fixed by law and payable in warrants drawn on the city treasurer and the duty of the comptroller in the premises being clearly defined by the ordinance and charter, there is no room for the exercise of such judgment or discretion as will preclude the court from compelling the performance of the duty by the writ of mandamus."

The court further stated:

"The city charter created an auditing committee consisting of the mayor, president of the council, and the comptroller, and made it the duty of that committee to examine or reject or disallow all claims and demands, of whatever nature, against the city, 'except salaries of city officers as fixed by this charter.' It is generally held that, where a law or ordinance fixes a salary to be paid to a public officer, it is the same as an adjusted claim and need not be adjudicated or audited. Merrill, Mandamus, §§ 135, 105, and cases cited.

"The claims and demands which are to be passed upon by the auditing committee are those which are constantly arising, and which vary from time to time, the amount and nature of which are not fixed by municipal law, and which are properly subject to scrutiny and allowance before payment. The amount of the salary of a city officer, fixed by ordinance, is as certain as one fixed in express terms in the charter. Where the charter has created the office, and either provided for a salary in express terms, or for the salary to be fixed by ordinance, the salary is the salary of a city officer fixed by the authority of the charter, and there is no reason or necessity for auditing the same; and the charter does not mean that such claims shall be audited by the auditing committee."

The rule applied in that case is applicable here, where the salary of the judges is fixed by the legislature and there is nothing to submit to the discretion of the county auditor or the board of county commissioners—there being no denial of the services for which warrants are sought.

Appellant expresses special dissatisfaction that the judgment in this case provides that the warrants ordered drawn and delivered shall be made payable out of the salary fund. Upon speaking of Rem. Rev. Stat., § 10967, already set out herein, which provides that the county auditor shall draw warrants to pay the judges' salary so as to be paid by the county treasurer out of the salary fund of the county, the argument is made by the appellant that that statute "was passed in 1893, and is not to be confused with the salary fund created in 1933;" and that

". . . the 1893 statute was modified by implication in 1897 (Laws of 1897, p. 166, § 62) by providing, in effect, that salaries should be paid out of the current expense fund."

It is unnecessary, however, to analyze the two statutes because the extraordinary session of 1933, by chapter 14 (Laws of 1933, Ex. Ses., p. 43, Rem. 1934 Sup., § 4201-1 *et seq.*), enacted a law, in effect, creating in class "A" counties *a fund to be known as the salary fund to consist of all fees, fines and other receipts heretofore and hereafter directed to be credited to the county current expense fund,* except real and personal taxes levied for such current expense fund, and the proceeds from the sale of county bonds, *and providing that the salaries and wages of all county officers and employees, for which provision has been made in the annual county budget for the current expense fund, shall be paid by warrants drawn on said salary fund.* With respect to this act of 1933, appellant correctly contends that relators, in addition to being state officers, are also county officers, *In re Superior Court Judges,* 82 Wash. 623, 144 Pac. 929; then further contends, erroneously however, that relators' salaries were not provided for in the present budget, and that, therefore, their salaries for this year are not payable out of the salary fund.

True, the budget, adopted prior to the appointment of these additional judges, did not, and could not, in so many words or by the total number of judges, contemplate these two additional judges, nor was anything necessary for that purpose, as we have already seen, more than what was actually done, namely, the adoption of a budget which provides a fund, not an appropriation, for the payment of the salaries of the superior court judges, available, of course, for those already in office as well as others provided during the year by the legislature without the advice or consent of the county commissioners or the county auditor. The two judges, relators in these proceedings, are entitled to warrants

on the same fund that the other judges are. Such was the judgment from which the appeal was taken.

Affirmed.

BEALS, C. J., MAIN, and MILLARD, JJ., concur.

STEINERT, J. (dissenting)—I dissent. The county commissioners in 1933, prior to the appointment of the relators herein, determined and set up the final budget for the superior court for the fiscal year of 1934. In that budget, they made provision for thirteen judges (the exact number of judgeships that King county had), a court commissioner, four stenographers, eighteen bailiffs, and a jury commission. Chapter 14, Laws of 1933, Ex. Ses., p. 43 (Rem. 1934 Sup., § 4201-1 *et seq.*), provided for the creation of a salary fund for class "A" counties, and for the payment out of that fund of the salaries of all county officers for whom provision *had been made in the annual county budget.* The prevailing opinion concedes that the relators are *county* officers, although state officers as well.

It cannot be argued, in my opinion, that the commissioners made provision in the budget for these relators. This very litigation is the best indication that they did not. In the very nature of things, the commissioners could not have made provision for them at that time, because the additional offices were not then in existence. It is obvious that the fund will be exhausted before the end of the fiscal year. Such exhaustion will affect not only the salaries of the original thirteen judges, but also those of the court commissioner, four stenographers, eighteen bailiffs and the jury commission. In short, the entire financial program of the county will be disturbed and disrupted by such procedure. Suppose, for instance, that the legislature, instead of providing two additional judges, had provided thirteen additional judges, necessitating

72

the appointment of thirteen additional bailiffs and an additional stenographic force. Under the reasoning of the majority opinion, the condition thus created would have been one of financial chaos for the county.

The situation here is not as though the relators had no other remedy. Their proper course was to have requested the commissioners to declare an emergency in accordance with the county budget act and make provision for their salaries, which undoubtedly would have been done. But whatever emergency provision the county commissioners may yet make, or may have the power to make, for the additional judges, I am of the firm belief that such provision can not affect the fund specifically provided for those numerically named in the budget. I think that relators have mistaken their remedy.

