[No. 28275. *En Banc.* December 6, 1940.]

THE STATE OF WASHINGTON, *on the Relation of Samuel Edelstein, Plaintiff*, v. RALPH E. FOLEY, *Respondent.*[1]

[1]Reported in 107 P. (2d) 901.

*Samuel Edelstein,* for relator.

*H. E. T. Herman, E. W. Robertson, Fred J. Cunningham, L. L. Thompson,* and *Alfred J. Schweppe,* for respondent.

MILLARD, J.—This is an original *quo warranto* proceeding in this court.

At the general election in this state in November, 1936, Honorable William A. Huneke was duly elected judge of the superior court, department two, for Spokane county, for a full term of four years, beginning the second Monday in January, 1937, and expiring the second Monday (January 13, 1941) in January, 1941. Judge Huneke qualified and performed the duties of his office until March 31, 1940, on which date he retired from office under the provision of the judges' retirement act (Laws of 1937, chapter 229, p. 1172, Rem. Rev. Stat. (Sup.), § 11054-1 [P. C. § 4418-201] *et seq.*) The governor appointed respondent, Honorable Ralph E. Foley, who qualified April 1, 1940, and entered upon the discharge of the duties of the office to fill the vacancy caused by Judge Huneke's retirement.

At the primary election in Spokane county September 10, 1940, relator, who had filed his candidacy therefor, was nominated for the unexpired term of judge of the superior court, department two, for Spokane county. At the general election, November 5, 1940, relator, whose name appeared on the election ballot for the position of judge of the superior court, department two, for Spokane county for the unexpired term, was elected to fill the unexpired term in question. A certificate of election was duly and regu-

446

larly issued November 18, 1940, by the Spokane county election board to relator, following canvass of the official election returns of the general election. Relator qualified (filed his oath of office in the office of the secretary of state) and demanded possession of the office, and, being refused, filed his petition in this court for an order requiring respondent to show cause why he should not be ousted from the office of judge of the superior court, department two, for Spokane county for the unexpired term of Judge Huneke, and relator be settled therein. By answer, respondent challenges the jurisdiction of this court on the ground that he is not a state officer within the meaning of Art. IV, § 4, of the state constitution, which grants to the supreme court original jurisdiction in *habeas corpus* and *quo warranto* and mandamus as to all state officers, "and appellate jurisdiction in all actions and proceedings. . . ." Further answering, respondent alleged that relator is precluded by law (Laws of 1937, chapter 15, p. 41, Rem. Rev. Stat. (Sup.), §§ 11044, 11049 [P. C. §§ 8662, 8627]) from qualifying for the unexpired term before the second Monday in January, 1941.

Respondent relies upon *State ex rel. Home Tel. & Tel. Co. v. Hurn,* 106 Wash. 362, 180 Pac. 400, as sustaining authority for his position that we may not exercise original jurisdiction in this proceeding, as the constitution (Art. IV, § 4, state const.) vests this court with original jurisdiction in *quo warranto* solely as to all state officers and respondent is a superior court judge, who is not a state officer within the meaning of the constitutional provision cited.

In *State ex rel. Home Tel. & Tel. Co. v. Hurn, supra,* the relator made an original application in this court for a writ of prohibition to restrain the superior court for Spokane county from assuming jurisdiction over a number of actions instituted to recover overcharges

for telephone services. The actions mentioned were separate actions brought by the same plaintiff, but had not been consolidated as one action. It appeared that in no one of the actions did the amount of recovery exceed the sum of two hundred dollars. All of the actions were civil in nature and brought at law for the recovery of money. It was the position of relator in that case that the superior court was without jurisdiction to hear and determine the causes until the matter of the overcharge had been filed with and presented to the public service commission.

We stated that *State ex rel. Home Tel. & Tel. Co. v. Hurn, supra,* belonged to that class of cases where the superior court is proceeding without jurisdiction and the amount involved does not exceed the sum of two hundred dollars. We held (this was determinative of the case) that prohibition does not lie to prevent the superior court from proceeding without jurisdiction to hear a civil action at law for the recovery of money involving less than two hundred dollars, the constitutional limitation upon the jurisdiction of this court, the superior court's decision as to its jurisdiction being final. A second question—the determination of which was not necessary in that case—we stated was of minor importance.

"This question is whether a judge of the superior court, in an application of this character, is to be considered a state officer. This question must be answered in the negative."

*In re Salary of Superior Court Judges,* 82 Wash. 623, 144 Pac. 929, is also cited by counsel for respondent in support of the contention that the superior court judges are not state officers. It is true that, in the course of our opinion, we stated that the claim that the superior courts are state courts and the judges of such courts are state officers did not correctly define the po-

sition those courts and officers bear to the several counties and to the state. In sustaining the enactment of 1907 increasing the salaries of the judges of the supreme and superior courts and authorizing the board of county commissioners of counties of the first class to increase the annual salaries of superior court judges, and providing that the amount of increase shall be paid solely by the county, we said:

"It seems to us clear therefore that the superior courts and the judges thereof occupy a somewhat dual position; that they perform both state and county functions, and serve both state and county purposes, and, hence, are officers for whose support the counties may make appropriations from county funds. . . .

"Holding, as we do, that our superior courts are not wholly state courts, existing alone for state purposes, and the judges thereof not wholly state officers, it is plain that these cases are not authority for the conclusion that the legislature is without power to authorize the counties to make appropriations for an increase in the salaries of such judges."

*In re Salary of Superior Court Judges, supra,* and *State ex rel. Home Tel. & Tel. Co. v. Hurn, supra,* it is clear, do not sustain the contention of respondent that superior court judges are not state officers, therefore we may not exercise original jurisdiction in this *quo warranto* proceeding.

Under Art. IV, § 4, of the state constitution, this court has original jurisdiction in *quo warranto* as to all state officers, and a superior court judge is a state officer. We have never held other than that a superior court judge occupies a dual position; that is, he is a state officer and also a county officer.

We held in *State ex rel. Dyer v. Twichell,* 4 Wash. 715, 31 Pac. 19, that judges of the superior courts are state officers within the purview of Art. VI, § 8, of the constitution, which provides that the first election of all state officers

" . . . not otherwise provided for in this constitution, after the election held for the adoption of this constitution, shall be on the Tuesday next after the first Monday in November eighteen hundred and ninety-two, and the elections for such state officers shall be held in every fourth year thereafter on the Tuesday succeeding the first Monday in November."

In the course of our opinion in *State ex rel. Dyer v. Twichell, supra,* we said:

"In certain places in the constitution reference is made to judicial officers in such a way as to show that they are not necessarily included in the designation state officers, but it does not follow that they are not included within such designation as used in some parts of the constitution. That they are more accurately described as state officers than as county or district officers is evident, not only from the character and extent of their jurisdiction and the locality in which they may be called upon to discharge their duties as such officers, but also from the fact that they are paid at least in part by the state, and vacancies occurring in the office are to be filled by the governor. In other states having similar provisions in their constitutions as to superior court judges they have uniformly been held to be state officers. We think the reasonable construction of the whole of the constitution will show that superior court judges are included within the designation of state officers as used in said § 8."

In *State ex rel. Pischue v. Olson,* 173 Wash. 60, 21 P. (2d) 516, which was an appeal from a judgment from the superior court for King county holding invalid the fee section of Laws of 1933, chapter 59, p. 327, which enactment created four additional judgeships for King county and endeavored to provide for an increase in filing fees to pay the salaries of the additional judges, we held that the enactment was void under the constitution, Art. IV, § 13, which provides that half of the salary of each of the judges of the superior court shall be paid by the state and the other half by the county

or counties for which he is elected, *making the judge both a county and state officer*; that the constitution is a limitation upon the powers of the legislature instead of a grant of power, hence the legislature had no power to provide for additional judges whose salaries were to be paid, to the extent that they received any salary, by filing fees exacted from litigants in the superior court for the county in which the case is instituted.

In *State ex rel. Lawler v. Grant,* 178 Wash. 61, 34 P. (2d) 355, in which we affirmed on appeal a judgment of the superior court in favor of relators in an action in mandamus to compel the county auditor to issue salary warrants to additional judges for the superior court in King county, we stated that the superior court judges, "in addition to being state officers, are also county officers."

■ Counsel for respondent insist that relator is precluded by the provisions of Laws of 1937, chapter 15, p. 41, § 2 (Rem. Rev. Stat. (Sup.), § 11049 [P. C. § 8627]), from qualifying for the unexpired term before the second Monday in January, 1941.

In view of the express language of the constitution (Art. IV, § 5, state const.) limiting the term of an appointee to the next general election, and, also, in the light of our opinions to the effect that the successful candidate at the next general election is entitled to qualify as soon as the result of the election is declared, and that the legislature is without power to abridge the term fixed by the constitution, it is clear that the statute (Laws of 1937, chapter 15) is unconstitutional.

The constitution provides, respecting the election of superior court judges and the term of office of all judges, as follows:

"The first superior judges elected under this constitution shall hold their offices for the period of three years, and until their successors shall be elected and

qualified, and thereafter the term of office of all superior judges in this state shall be for four years from the second Monday in January next succeeding their election, and until their successors are elected and qualified. The first election of judges of the superior court shall be at the election held for the adoption of this constitution. If a vacancy occurs in the office of judge of the superior court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall be at the next succeeding general election, and the judge so elected shall hold office for the remainder of the unexpired term." Article IV, § 5, state const.

Laws of 1937, chapter 15, p. 41, § 2, reads as follows:

"If a vacancy occurs in the office of a judge of the superior court, the Governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election, and the judge so elected may qualify on or after, but not before, the second Monday in January next succeeding such general election, and shall hold office for the remainder of the unexpired term: . . . ."

Laws of 1937, chapter 15, p. 41, § 2, which fixes the time for qualification of a judge elected for the remainder of unexpired term at a time contemporaneous with or subsequent to the expiration of that term, constitutes a curtailment or abolition of the unexpired term specifically created by Art. IV, § 5, of the constitution of the state of Washington, and is not a valid exercise of the legislative prerogative.

In *State ex rel. Dyer v. Twichell,* 4 Wash. 715, 31 Pac. 19, we held that the provision of an enactment which attempted to change the term of office of judges of the superior court, where such judges were elected to fill offices of additional judges created by the enactment, was void; that the judgeships created by the enactment must be regulated, so far as the election

and tenure of office were concerned, by the constitution and must all be uniform and must be filled by election on the same day; and that the legislature was without power to change the term or tenure of office created by Art. IV, § 5, of the state constitution.

In *State ex rel. Linn v. Millett,* 20 Wash. 221, 54 Pac. 1124, we held that a judge of the superior court, who had been elected to fill an unexpired term, was entitled to qualify and take office as soon as the result of the election had been declared, under Art. IV, § 5, of the constitution, as the constitutional provision fixing the second Monday in January succeeding their election as the date when officers shall qualify *applies* exclusively *to original terms beginning on that date, and not to unexpired terms.* That was an original proceeding in *quo warranto.* The facts in that case are that, at the general election in November, 1896, Charles H. Ayer was elected to the position of judge of the superior court for Thurston county for a full term of four years beginning the second Monday in January following his election. Judge Ayer qualified and performed the duties of his office until his death in March, 1898, and thereupon the governor appointed Byron Millett to fill the vacancy. At the general election held November 8, 1898, relator, O. V. Linn, was elected to fill the unexpired term; that is, to fill the remainder of the term for which Judge Ayer was elected, which term would expire the second Monday in January, 1901. The relator filed his oath of office and demanded possession of the office, and, being refused, instituted in this court a proceeding in *quo warranto.* We said:

"The respondent's position is that since, under the constitution, the different state officers are required to qualify on the second Monday in January succeeding their election, the relator in this case is not entitled to take office until such time; while the relator's

position is that, having been elected to fill an unexpired term, he is entitled to qualify and take office as soon as the result of such election has been declared. We think the relator's position is well taken, and that the respondent's position cannot be maintained. The provision of the constitution which fixes the second Monday in January succeeding their election as the time when the different state officers, including superior judges, shall qualify, relates exclusively to original terms or terms beginning in January following the election; while the provision of § 5, art. 4, *supra,* which controls this case, applies only to cases where a vacancy exists, and the party elected is to serve the remainder of a term then current. The commission of the governor only entitles the holder to retain office until his successor is elected and qualified, and the word 'remainder,' as found in that section, relates to the term existing at the date of the election, not to a term beginning some months later. We have in this state biennial elections. If respondent's position is correct, and a vacancy should occur at any time within two years prior to the last election preceding the commencement of a new term, the provision of the constitution referred to, which requires a successor to be elected at the next ensuing election, would be meaningless, because, if he could not qualify until the January following his election it would follow that the term would have already expired,—a condition which we think is not contemplated by any fair construction of the constitution, and certainly not within the letter of it. Counsel for the respondent has urged upon the consideration of the court the importance of having a fixed and certain time at which elected officers shall qualify, and argues that great public inconvenience might follow if it were held that a judge elected to fill a vacancy might qualify any time after the result of the election is declared. But we think the inconvenience that is apprehended is largely imaginary, and no construction that can be suggested would render complications impossible. It can make little difference whether the duties of the appointed judge terminate on the second Tuesday in

November or the second Monday in January. However, the constitution plainly limits the right of the appointed judge to hold until the election and qualification of his successor at the next succeeding general election. We cannot well conceive how language could make the proposition plainer, and think there is little, if any, room for construction."

In *State ex rel. Murphy v. McBride*, 29 Wash. 335, 70 Pac. 25, in construing Laws of 1901, chapter 148, p. 345, which increased the number of judges of the supreme court and the act created the term for which the additional judges were to serve, we held that, under Art. IV, § 3, of the constitution, which fixed the terms of judges elected to the supreme court at six years from and after the second Monday in January next succeeding their election, and that if a vacancy occur in the office of a judge of the supreme court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election, and the judge so elected shall hold the office for the remainder of the unexpired term, the six year term fixed by the constitution was applicable only to elected judges, and a statute fixing the term of appointive judges for a period short of the succeeding general state election would not be in conflict therewith. We said:

"The vacancy here referred to is evidently intended to apply to a vacancy which shall continue beyond an election and for the remainder of the unexpired term. The unexpired term referred to is the remainder of the six-year term. The clear intention of this section of the constitution is (1) to require that the judges of this court shall be elected whenever there is an election at which they may be elected; (2) that the terms of *judges elected* shall be six years; and (3) that appointive judges shall not serve for a longer time than the next succeeding general election and

the qualification of a successor. There is no limitation, either express or implied, upon the legislature to make appointive terms extend to an election. The limitation is that, where a vacancy occurs which extends beyond an election, then an appointee shall hold until the next succeeding general election, and until the qualification of a judge to fill the vacancy. It cannot be said that all vacancies which occur in the membership of this court may be filled by an appointee from the time of the appointment to the next succeeding general election, because a vacancy may occur after the election of a successor to one of the elected judges, and before the expiration of his term, where no election intervenes, which vacancy could be filled by appointment only until the expiration of the term. *State ex rel. Babcock v. Black,* 22 Minn. 336. For example, the regular elective term of Judge Reavis expires on the second Monday of January, 1903. His successor will be elected regularly in November of this year. No other general election will be held until November, 1904. If Judge Reavis *should* resign on the day following the election in November next, and the governor should appoint a person to fill the vacancy occurring by reason of such resignation, it certainly cannot be held that such an appointee may hold office until the next succeeding election, two years hence, and thus deprive the regularly elected judge from taking office on the second Monday in January next succeeding his election. The term of an appointive judge, therefore, is not fixed, except that it cannot extend beyond an election and the qualification of his successor, or to the end of the term. When the term of judges elected was fixed at six years, it was intended thereby to distinguish elected judges from appointed judges, and to fix the terms of elected judges for a definite time, and to limit the terms of appointed judges to the next election. Within that limit the legislative power is complete. It may provide for a term of any length of time up to the succeeding general election. This term is appointive. But if a vacancy is created which extends beyond an election, the provisions of the constitution apply, and the legislature has no authority to change or modify the 'terms'

therein contained. The act in question does not attempt to change or modify the terms of judges elected. It undertakes to create a vacancy and to terminate the vacancy, at a fixed time before an election can take place, and before an elective term may begin; and this, we hold, may be done, because there is no fixed constitutional appointive term. It is certainly not necessary that a general act be passed, increasing the number of judges for an indefinite time, and that subsequently another act be passed, decreasing this number. What may be done by a legislative body indirectly may be done directly. The act in question is not in conflict with any constitutional term, and in so far as it increased the number of judges of this court temporarily, was not in conflict with any provision of the constitution."

In *State ex rel. Sears v. Gilliam,* 93 Wash. 248, 160 Pac. 757, we affirmed on appeal a judgment of the superior court which denied a writ of mandamus to compel the placing of relators' names upon the general election ballots as nominees for the office of superior court judge. We held that no duty rested upon the county auditor to prepare a ballot for unexpired terms unless there was a filing for such unexpired terms; that is, where there is a vacancy in the office of judge, candidates may announce themselves for either the long or the short term and the ballots under the primary law of 1911 were arranged accordingly. If there were no announcements there would be no reference to the vacant office on the ballot. The facts in the case are as follows: On the second Monday in January, 1915, Honorable John E. Humphries qualified as a superior court judge for King county for the term ending the second Monday in January, 1917. On May 15, 1915, Judge Humphries died and John S. Jurey was appointed by the governor of the state to fill the vacancy. Judge Jurey qualified. The primary election for 1916 was held September 18th. There were

no filings of candidates for the so-called short term or the period between the general election to be held November 7, 1916, and the 8th day (second Monday) of January, 1917, at which time all persons elected at a general election for a full term were competent to qualify under Art. IV, § 5, of the constitution. A certain number of electors of the county of King by writing the name of the office and term intervening between the election and the time when a regular term began, and the names of these relators, voted for these relators for the office of superior court judge for the short term. The relators, alleging that they were candidates regularly nominated, sought by way of mandamus in the superior court to compel the county auditor to place their names upon the general election ballot and to give notice for such election for the time provided by the law. The writ was denied, and the case was brought to this court for review. We affirmed the judgment. We said:

"If any one aspires to fill an unexpired term existing because of a previous vacancy, he is not without remedy. He may file for the unexpired term, and compel, by appropriate proceedings, the submission of his candidacy. He cannot, without previous announcement, compel his nomination unless the people have had notice that there is an office to be filled.

"It follows, there being no announcements of candidacy, and therefore no notice to the public, that no one will be elected to fill the unexpired term for which Judge Humphries was elected and of which Judge Jurey is now the incumbent. Nor does it follow that the office will be vacant. By the terms of the constitution, the incumbent will hold the Humphries' term until a successor to that term is elected and qualified. There being no candidates selected in the manner provided by law, and the time having passed when there can be, the obvious conclusion is that there is no vacancy to fill, for, by the fundamental law, Judge Jurey may, if he so will, continue to discharge the office until

the one who may be elected to succeed to the full term is able to qualify, which will be on the second Monday of January, 1917."

In that case, we cited with approval *State ex rel. Linn v. Millett, supra,* to the effect that, unless nominations are filed for the unexpired term and the public has had notice of such vacancy, nomination cannot be made by writing the names of candidates or by stickers so that the judge appointed to fill the vacancy would hold such until the expiration of the term, no notice being given of a vacancy to be filled.

In *State ex rel. Dore v. Superior Court,* 171 Wash. 423, 18 P. (2d) 51, the question presented was the duration of the term of appointment of justice of the peace to fill an unexpired term where the incumbent elected for the full term died during the term of office. In that case, John B. Wright was elected in November, 1930, and qualified as justice of the peace for the term beginning the second Monday in January, 1931, and ending the second Monday in January, 1935. John B. Wright died June 27, 1932, whereupon the board of county commissioners appointed Fred H. Dore, who qualified July 7, 1932, to fill the vacancy and to hold the office until the next general election and until his successor was elected and qualified. At the primary election September 13, 1932, Mr. Dore was nominated as candidate of the Republican party and Mr. Knott was nominated as candidate of the Democratic party. At the general election November 8, 1932, Mr. Knott received the greater number of votes and was elected and qualified for the office. His demand upon Mr. Dore for surrender of the office was refused. On the question as to when the term of office expired of Mr. Dore as the appointee of county commissioners, and when the person elected to fill the term at the general election might qualify, we said:

"Under the law, the successful candidate was entitled to qualify as soon as the result of the election was declared. *State ex rel. Linn v. Millett,* 20 Wash. 221, 54 Pac. 1124; *State ex rel. Sears v. Gilliam,* 93 Wash. 248, 160 Pac. 757."

See, also, to the same effect, *State ex rel. Caplan v. Bell,* 185 Wash. 674, 56 P. (2d) 683, in which we held that, under the constitution, Art. XI, § 6, and Rem. Rev. Stat., § 4059 [P. C. § 1678], providing that the board of county commissioners shall fill all vacancies occurring in any county office by appointment to hold office "until the next general election" and until their successors are elected and qualified, an appointee during the first half of a four-year term holds only until the next general election and the qualification of a successor. We said:

"The argument seems to be that the legislature, by recognizing the need of an election to fill a vacancy occurring in the first half of the term, has thereby indirectly determined that no such election shall be held if the vacancy occurs in the last half of the term.

"But, even if such were the legislative intent (which we by no means hold), it would be abortive, because Art. XI, § 6, of the constitution, hereinbefore quoted, by its express language limits the term of an appointee to the next general election and until his successor is elected and qualified."

By Art. IV, § 5, of the constitution, there was created in plain understandable language an unexpired term. In the event of a vacancy in the office of judge of the superior court, the governor shall appoint a person to hold that office until the election and qualification of a judge to fill the vacancy. That election shall be at the next succeeding general election, and the judge so elected shall hold office for the remainder of the unexpired term. The constitution has definitely and

clearly limited the right of the appointed judge to hold until the election and qualification of his successor at the next succeeding general election. The right to the unexpired term after election comes from the constitution. That term can not be abridged by either the legislature or by the courts.

The patent attempt of the legislature, by Laws of 1937, chapter 15, to abolish the unexpired term by the provision that the judge elected thereto at the general election may not qualify therefor until the day the unexpired term ends, is invalid. As soon as the result of the election is declared, the successful candidate is entitled to qualify for the office.

However desirable it may be of having a fixed and certain time at which elected officers shall qualify and thereby obviate public inconvenience—doubtless the purpose of the legislature in enacting Laws of 1937, chapter 15—that argument is answered by the following language from our opinion in *State ex rel. Linn v. Millett,* 20 Wash. 221, 54 Pac. 1124:

"It can make little difference whether the duties of the appointed judge terminate on the second Tuesday in November or the second Monday in January. However, the constitution plainly limits the right of the appointed judge to hold until the election and qualification of his successor at the next succeeding general election. We cannot well conceive how language could make the proposition plainer, and think there is little, if any, room for construction."

It is unnecessary to review the opinions of other supreme courts as our own are determinative of the two questions presented in the case at bar. We have not overlooked *State ex rel. Middleton v. Scott Circuit Court,* 17 N. E. (2d) (Ind.) 464, and *Board of Commissioners v. District Court,* 29 N. M. 244, 223 Pac.

516, but are not inclined to follow the holding in those cases for the reasons above stated.

The writ is granted.

BLAKE, C. J., ROBINSON, JEFFERS, and DRIVER, JJ., concur.

BEALS, J. (dissenting)—I am in accord with the majority in holding that, for the purposes of this case, a judge of the superior court is a state officer. On the other phase of the case, I am not in accord with the opinion of the majority.

In my opinion, § 5, Art. IV, of the state constitution, quoted in the majority opinion, in so far as it provides for the filling of a vacancy in the office of the judge of the superior court, does not *create* any *elective term*. It simply provides for an appointment by the governor to fill an existing vacancy, and for the election of a judge to fill the vacancy, to "hold office for the remainder of the unexpired term," whatever under the law that may be. Manifestly, the framers of the constitution desired the terms of judges of the superior court to remain constant, and that all the superior court judges in the state should be elected for four year terms, those first elected for that term to take office the second Monday in January, 1892, others to take office on that day in four year periods thereafter. The terms having been established at four years, were it not for the last portion of the section, the terms throughout the state would soon become staggered, some four year terms expiring at one biennial general election, other terms expiring at the following biennial election. This the framers of the constitution guarded against by the language used.

What might be called two different classes of vacancies may occur in the office of judge of the superior court. Assume the election of Judge A to take office

the second Monday of January, 1892, his four year term to expire on the same day in January, 1896. If Judge A resigns after one year's service, three years of his term remain. The governor appoints Mr. B to the vacancy. Under the constitution, an election to fill the unexpired term must be held in the fall of 1893, the person elected to hold office until the second Monday in January, 1896. This court held, in the case of *State ex rel. Linn v. Millett,* 20 Wash. 221, 54 Pac. 1124, cited in the majority opinion, that the person elected at the general election in 1893 could assume office as soon as he was elected and qualified, displacing at that time the judge who was holding the office by appointment. The constitution does not say when the person elected under these circumstances shall or may qualify; it simply says that the appointee shall hold office until the person who has been elected shall qualify. In such a case as has been supposed, the election is to fill the unexpired term. It seems to me that it might reasonably have been held, under the constitutional provision, that the person elected should qualify on the second Monday of January following his election, but in the case cited this court reached a different conclusion.

The other situation which often follows the creation of a vacancy happens when a judge elected as the supposed Judge A, *supra,* holds his office for three years, past the first biennial general election following that at which he was elected, and then resigns, Mr. B being then appointed as his successor. At the next general election, which would be held in November, 1895, a superior judge would be chosen, not for any unexpired portion of Judge A's term, but to fill a new term, to commence the second Monday of January following. The person elected to that office is not con-

cerned with any unexpired portion of Judge A's term; he is elected to fill a new term of his own.

This is the situation presented in the case at bar. The judge elected for the new term cannot, by reason of his election, displace the appointee filling the unexpired term of Judge A, because he was not elected to fill any unexpired term. It seems to me that the framers of the constitution had in mind the first situation, and that they inadvertently failed to consider the possibility that someone would claim the existence of a tag-end term, commencing at some uncertain date after the election (when the canvass of votes should be completed) and ending on the second Monday in January following.

Of course, at the time of the adoption of the constitution, nominations for judicial office were made by party conventions, no individual having the right to, by his own act, place his name upon the ballot. An entirely different situation is presented under the direct primary law now in force.

Laws of 1937, chapter 15, p. 41, § 2, is quoted in the majority opinion, and therein held unconstitutional. As has been repeatedly held, an act of the legislature should be held void, as contravening the constitution, only when such a holding is necessary. Every presumption is in favor of the validity of an enactment of our legislature. The statute attempts to accomplish an eminently desirable objective in the interest of orderly judicial procedure. It is highly advantageous that a judge of the superior court know definitely some time in advance when his service will end, in order that he may see to it that he brings to an end litigation pending before him, in so far as the superior court is concerned.

The statute by its terms applies with equal force to the election of a judge who shall serve the last two

years of a term, and to a situation such as is presented by the case at bar. In both cases, a judge elected to serve the balance of the unexpired term cannot qualify, if the statute be valid, until the second Monday in January following the election. In such a situation as is here presented, this would probably operate to prevent one elected as was relator here from ever qualifying, as the person elected to fill the new term would probably qualify on the date referred to. If, however, he should not qualify on that date, it seems to me that the person occupying relator's position could then qualify and serve until the person elected to fill the new term does qualify. With this particular question, we are not here concerned.

Section 5, Art. IV, of the state constitution, quoted in the majority opinion, is not self-executing. In the case of *State ex rel. Sampson v. Superior Court,* 71 Wash. 484, 128 Pac. 1054, Ann. Cas. 1914C, 591, it was held that votes cast at a general election for the relator for an unexpired term of one of the positions of judge of the superior court for King county, a vacancy having been created by resignation, did not constitute a valid election, entitling the person voted for to the position of judge for the remainder of the unexpired term, no notice of the holding of an election to fill such vacancy having been given.

In the later case of *State ex rel. Ferguson v. Superior Court,* 140 Wash. 636, 250 Pac. 66, it was directly held that the constitutional provision above referred to is not self-executing, and that:

"It is for the legislature, and not the courts, to provide the notice for and the method of conducting elections, general or special. The only express limitation we see in the constitution is that such an election, as is here drawn in question, shall be held at the time of the general election. It is plain, we think, that some notice must be given, and we think it equally plain

that it is for the legislature to prescribe the time and manner of giving such notice. A minimum of thirty days having been expressly prescribed by the legislature as the time for the giving of such a notice and it being impossible to give such a notice for want of time, we conclude that the proposed election here in question cannot be lawfully held."

If the constitutional provision is not self-executing, and is subject to the limitations referred to in the cases above cited, it seems to me that the legislative authority may also be exercised in prescribing the date at which one elected for an "unexpired term" may assume office.

The legislature has by law provided an election machinery for carrying out the constitutional provisions laying down the fundamental laws for elections of state and county officers. The legislature has required that citizens qualified to vote, and desiring to exercise the franchise, must register as voters a certain period before the date of an election. The canvass of the votes has also been provided for, and the making of due returns thereof.

The constitutional provision here in question says nothing concerning the date at which one elected to fill an unexpired judicial term may qualify. Of course, he cannot qualify until the votes are counted and canvassed, and the result of the election determined—an uncertain date, save as provided by legislative enactment. In my opinion, the act of 1937 nowise contravenes the constitution, but provides for carrying the constitutional provisions into effect in a perfectly reasonable and orderly manner.

My view finds support in the decisions of the supreme courts of Indiana and New Mexico, referred to in the majority opinion. These authorities are, of course, not binding upon this court, but are persuasive, and, in my opinion, correctly declare the law.

I am convinced that Laws of 1937, chapter 15, § 2, is a valid exercise of legislative authority, and nowise contravenes any constitutional provision. Believing that the application for the writ should be denied, I dissent from the conclusion reached by the majority.

MAIN, SIMPSON, and STEINERT, JJ., concur with BEALS, J.

