## W. T. WYNN v. THE STATE OF MISSISSIPPI.

1. CONSTITUTIONAL LAW. *Public Schools. Uniform system. Selection of county superintendents.*

    Sec. 1, art. viii. of the constitution of the state, which makes it the duty of the legislature to establish " a uniform system of free public schools," does not require uniformity in the manner in which county superintendents of education are to be chosen in the several counties.

2. SAME. *Election of county superintendents. Act of March 7, 1888.*

    Accordingly the statute (Acts 1888, p. 36), which provides for the election of county superintendents of education in some but not all the counties of the state is not violative of the constitution.

3. SAME. *Eligibility to office. Qualifications.*

    Every qualified elector in this state is eligible to any office created by the constitution, for which special qualifications are not therein prescribed.

4. SAME. *Office of county superintendent. Legislative qualifications. Act of March 7, 1888.*

    So much of this act as provides that no person shall be eligible to such office of county superintendent of education who does not hold a first-grade

certificate, is repugnant to the constitution of the state, and void.   The court declines to follow a contrary rule announced in *Burnham* v. *Sumner*, 50 Miss. 517.

From the circuit court of the first district of Yalobusha county. Hon. W. M. Rogers, Judge.

By an act of the legislature, approved March 7, 1888 (Laws 1888, p. 56), it was provided that county superintendents of education for certain counties named in the act should be elected as other county officers, and that in all counties in the state not named in the act the office should be filled by appointment by the state board of education under the law then in force.   The county of Yalobusha was among those named in the act.   Section 2, of said act is as follows : " No person shall be eligible to such office of county superintendent of education who does not hold a first-grade certificate ; and the term of county superintendents of education so elected under this act shall begin on the first Monday in January, 1890, and shall continue two years, or until said superintendent's successor shall qualify."

The appellant, W. T. Wynn, was elected to said office in Yalobusha county at the regular election in November, 1889, and on the first Monday in January following took the oath, and entered upon the duties of the office, when the district attorney, on behalf of the state, filed this information in the nature of a *quo warranto* against him to try his right to said office.

The information alleges that the said act of 1888, providing for the election of county superintendents of education in certain counties, is unconstitutional, being in violation of art. viii., § 1, of the constitution of this state, which requires that the legislature shall establish a uniform system of free public schools.   His eligibility to the office is also assailed because at the time of his election and qualification he did not hold a first-grade certificate as required by section 2 of the act.

The defendant pleaded to the information, and, besides contending that the said act was constitutional in so far as it made the office in certain counties elective, and he averred that he held for

the year 1886 a first-grade certificate as a teacher in the said county, which had never been revoked.

The proceedings were heard before the judge in vacation who held that the defendant was not entitled to the office, and rendered judgment ousting him therefrom.

*Howry & Falkner,* for appellant.

1. The system for which uniformity is required is the system of *schools,* not the machinery which puts the schools in motion or keeps them up, or directs their control. Neither the free public schools themselves, nor the system provided for by the constitution is interfered with or made to lack uniformity by the appointment of superintendents in the several counties or by their election.

Power is expressly granted to the legislature to make the office elective. The legislature did not see fit to avail itself of all the powers it had. The partial exercise of the right to elect in the counties embraced in the act impinges neither the letter nor the spirit of the organic law. Judicial powers cannot impede the operation and effect of the laws unless they *manifestly* violate the constitution or the rights of the citizen. In cases of doubt every possible presumption and intendment is in favor of the constitutionality of the act. *Burnham* v. *Sumner,* 50 Miss. 520 ; Sedgwick Cons. Stat. & Con. 409 ; Cooley Con. Lim. 184.

2. The act of 1888 is not void because it attempts to add to the term of the office of the county superintendents by providing that they shall hold until their successors qualify.

The elected superintendent may not hold until his successor shall qualify, beyond the two years, but this provision of the act is surplusage and ineffective and voidable. It cannot impede the complete effect of the law as far as a two years term goes. If it could, this is not an objection to the act having such operation as it can. The scheme as a whole may still be carried out. *Price* v. *Anderson,* 65 Miss. 420. Nor is there anything in the objection that appellant's term does not begin until February. The term of the elected official begins on the first Monday in January, although the possession of the office may not be had until after that time. *The State* v. *Williams,* 49 Miss. 640.

3. If the court is satisfied with the decision in *Burnham* v. *Sumner*, 50 Miss. 520 (of the soundness of which in discussing the educational qualification there is great reason to doubt), then we submit that appellant has the proper certificate as to character, qualification, capacity and ability to perform the important functions of the office. The law nowhere says that a first-grade certificate must be had for every scholastic year. Appellant has a certificate under the act of 1886. It has not expired by operation of law.

*Sullivan & Whitfield*, for appellee.

1. An examination of the act of 1888 will show that the holding of the first-grade certificate as teacher at the time of the election was an absolute prerequisite to the eligibility of the appellant to the office of county superintendent. This he did not have, and does not pretend to have had. The certificate exhibited is, of course, worthless, having expired as shown on its face.

2. The act of 1888 is violative of art. viii., § 1 of the constitution of the state requiring a uniform system of free public schools. It is the "system" which is to be uniform—the administrative machinery. That system in its organization, in its executive completeness, must be uniform. There is no uniformity if in some counties the superintendents are appointed, and in others elected. It is provided in § 4, that "the legislature shall have the power to make said office of county school superintendent of the several counties elective as other county officers are." Note the words, *the office*, not the officer—the office in its political oneness throughout the state. "As other county officers are"—all elected, or all appointed. The words "several counties" is the exact equivalent of the word respective, meaning, of course, all the respective counties composing the state.

3. Again, the constitution, art. v., § 22, expressly provides in reference to all state and county officers, except this, that they shall hold during their terms, and until their successors shall be duly qualified. But as to this office art. viii., § 4, the term shall be "for two years" only. And yet the act of 1888, leaving those who are appointed to serve for terms of only two years, provides that

those elected shall hold for two years, and "until their successors are qualified." If this be a uniform *system*, we know nothing of the force and significance of words. The act is palpably violative of the constitution, and is utterly devoid of any practical good purpose to be subserved.

*Phil. A. Rush*, on the same.

The state constitution requires the establishment of a uniform system of free public schools. A system is a combination of parts into a whole, as, for instance, we speak of an elective system and an appointive system. The obtaining of superintendents in different ways destroys the uniformity of the system. This is as much a part of the system as any other thing done under the school law. No one thing can constitute the "system." It embraces all the parts that go to make up the whole.

A lack of uniformity is· found in the fact that under the elective system—in the elective counties—the applicant for superintendent must only have a first grade certificate. In the appointive counties the act of 1886 requires, among other qualifications, "executive ability" to perform the duties of the office, the duties being prescribed. They have one standard of ability in some counties, and a different standard in others. Section 4, art. viii., of the constitution provides that the legislature may make the office elective in the several counties as other county officers. The phrase "the several counties" sets the matter beyond doubt. Not "all" the counties, for this might mean that the entire state voted on all of them ; not "any" of the counties, because that would have been violative of the uniformity of the system. The adjective "several," preceded by the definite article "the" and followed by a plural noun, always means all—each to be taken separately. If this court should say, "we will call the several cases on the docket," it would mean all the cases calling them separately. The obvious intendment, then, of the constitution is that the mode of filling the offices in all the counties shall be the same.

The appellant was clearly disqualified for want ·of a first-grade certificate. Neither a construction of the act, nor the policy of the

law, would justify the proposition that a certificate once obtained is imperishable—once qualified, always qualified. The license was expressly for one year, and had expired before the election.

CAMPBELL, J., delivered the opinion of the court.

This case involves the consideration of, "An act to provide for the election of county superintendents of education by the people," approved March 7, 1888. The act is assailed as violative of the constitution, because it provides for the election of county superintendents in a large number of counties, and not in all, which, it is said, conflicts with § 1, art. viii., of the constitution, in its requirement of "a uniform system of free public schools." It is not denied that the legislature could make the office elective in all the counties, but the argument is that this power must be exerted as to all the counties or none. We reject this view as unsound. The greater includes the less. The whole embraces all the parts, and power to make the office elective throughout the state by counties includes power to apply this rule to any number of counties.

It may be difficult to determine the precise meaning of the expression, "uniform system of free public schools," as used in the constitution, and we are not called on in this case to attempt to define it, further than to say we do not think it has any reference to the manner in which county superintendents of education are obtained, any more than it refers to the houses in which schools may be taught. Uniformity in the system is observed by having a county superintendent of education in each county, as provided for, without regard to the circumstance of his appointment or election. The uniformity meant by the constitution has reference to the system of free public schools, and not to the county superintendents, since it is not perceivable how the particular authorized mode of obtaining this official, a different person for each county, could mar the uniformity of the system of free public schools. The source from which he derives his right to his office has no connection with or relation to his duties in office. They are prescribed by law, and the uniform system of free public

schools is in no way dependent on or affected by how the county superintendent gets into office.

Section 2 of the act provides, " that no person shall be eligible to such office of county superintendent of education who does not hold a first-grade certificate." We assume that it means a first-grade license as a teacher, as provided for by " an act in relation to free public schools," approved March 18, 1886, for if it does not mean that, it has no meaning ; and with this assumption, it seems clear that the purpose of the act was to require, as a qualification for election to the office, a first-grade teacher's license in force at the time, and therefore, that one which had expired as such is insufficient. The certificate which was given the appellant in 1886 was not such as the act requires to make him eligible to the office, and, if this section of the act is valid, he was properly ousted from the office, as being ineligible. Can this requirement be maintained ? If it does not conflict with the constitution, it must be upheld, however great the practical difficulties in its operation or the curious complications which may arise under it. Under it every county superintendent of education in the state (not holding a first-grade certificate, and probably not one did), was ineligible at the election in 1889, as his own successor ; and hereafter one elected and holding the office cannot be made eligible to succeed himself, unless he can examine himself, and give himself a first-grade certificate !

Besides this, it is in the power of a county superintendent of education to preclude anybody from eligibility to the office, for he might refuse a certificate of the kind required to any one (or he might revoke it as he has the power), and thus prevent the office from being filled. There is no way to compel a county superintendent to give a certificate. It is matter of discretion determinable by him, and not controllable by the courts. He might thus arbitrarily prevent any one from eligibility to succeed him. Such a course is not likely to be pursued, but the bare possibility of its occurrence, together with other considerations, is enough to suggest careful inquiry as to the validity of this section. Under it not only are county superintendents of education rendered ineligible for election to the office, and may they prevent everybody from being

eligible, but the most distinguished scholar and educator or the most eminent divine, possessed of the greatest learning and highest moral and religious character, could not be chosen by the qualified electors as county superintendent of education, unless he had obtained from the county superintendent a first-grade certificate, to obtain which he would have to commit a *pious* fraud, in applying for a license to teach, when his whole object was to become eligible to the office of county superintendent of education.

The possibility of a condition of things by which a vacancy might be created in the office without the power to fill it until remedial legislation should remove the difficulty, was never contemplated by the legislature, of course; and if this view of the section under consideration is not sufficient of itself to annul it, it presents an explanation of our having been led to examine the question of its validity under other provisions of the constitution applicable to it. Section 18, art. i., of the constitution is, "no property or educational qualification shall ever be required for any person to become an elector." Section 2, art. vii., makes "all male inhabitants of this state (with certain exceptions), twenty-one years old . . . . etc., qualified electors." Section 4 is, "no person shall be eligible to any office . . . . who is not a qualified elector." These provisions make it clear, we think, that every qualified elector is eligible to any office for which other qualifications are not specifically required by the constitution. For many of the offices created by it qualifications of age or residence are prescribed. As to other offices for which it provides there are no qualifications required, except that contained in § 4 above, viz: to be a qualified elector. This shows that, where other than the general requirement to be a qualified elector was intended, it was prescribed, and where no special qualification for an office was prescribed, it was intended that the general provision should apply, and to be a qualified elector is sufficient. From the provision, "no person shall be eligible to any office . . . . who is not a qualified elector" the implication is very strong that a qualified elector shall be eligible to any office, unless otherwise provided; and, in view of the fact that it is otherwise provided as to certain offices, the implication becomes

a necessary one, and decisive against the claim of power in the legislature to add to the constitutional qualification for office. It is inconceivable that the framers of the constitution in providing, "that the legislature shall have power to make said office of county school superintendent of the several counties elective, as other county officers are," intended to include the power to restrict and limit the range of choice by the qualified electors, so as to exclude all except such as should comply with certain requirements unknown to the constitution, and not in harmony with its spirit and provisions. If the legislature has the power to prescribe qualifications for an office created by the constitution, it may make them what it pleases in its discretion. Grant the power and it must be held to be without limit, except by some positive prohibition of the constitution, and there is none except that "no property qualification for eligibility to office shall ever be required," and that no one but a qualified elector shall be eligible to any office. Suppose that the legislature, instead of imposing as it endeavored to do, a just and proper condition of eligibility to the office—one calculated to secure fitness and efficiency—had provided that none except colored men should be eligible in certain counties, or had made some other requirement equally absurd and ridiculous, would any be found to contend for the validity of such an enactment? It is thus seen that the only safe course is to deny the right of the legislature to add to any office created by the constitution, any qualification for the incumbent not imposed by the constitution itself. As offices were created by it, and the subject of qualification dealt with and special requirements made for certain offices, and general requirements as to all, it must be assumed that it prescribes all that was intended, and that none can be added, however appropriate they may be.

In *Burnham* v. *Sumner*, 50 Miss. 517, the requirement of the certificate prescribed by the act of 1873, as a condition of the right to receive an appointment by the state board of education to the office of county superintendent, was held valid, and that an appointment without such certificate was void. This view is a very plausible one, but we are convinced, and have endeavored above

to show, that it is not maintainable.    Such a requirement by law is unnecessary as to the state board of education, since it may by its own will make and apply that rule, and, in our opinion, this attempt to control the board created by the constitution, and charged by it with power and duty to appoint county superintendents, by and with the advice and consent of the senate, was *extra-constitutional*.

It is manifest from the opinion of the court in the case cited that the conclusion reached and announced was attempted to be justified by the rule of caution applied by the courts in declaring the legislative acts violative of the constitution, and by the salutary character of the requirement sustained; and it is reasonably certain that the condition of public affairs at that date (1874) pressed heavily upon the court to maintain so reasonable a requirement as was contained in the act of 1873.    But the reasonableness and excellence of a provision is not the test of its agreeableness with the organic law, and it is never allowable to make expediency a rule by which to interpret the constitution.

*Reversed and remanded.*

*Phil A. Rush*, of counsel for appellee, filed a suggestion of error supported by a lengthy and elaborate written argument, reviewing the whole case and urging the court to modify its opinion and hold the act of 1888 unconstitutional.

*Denied.*