[No. 33243. *En Banc.* August 11, 1955.]

*In the Matter of the Contested Election of* WILLIAM F. BARTZ *for the Office of Justice of the Peace, Chehalis Precinct, Lewis County.*

R. V. WAGNER, SR., *Respondent,* v. WILLIAM F. BARTZ, *Appellant.*[1]

[1]Reported in 287 P. (2d) 119.

Ronald Moore, Jerome Walstead, and Willard Walker, for appellant.

C. D. Cunningham, for respondent.

ROSELLINI, J.—The question to be determined on this appeal is whether Laws of 1951, chapter 74, p. 210, and chapter 156, § 2, p. 430 (RCW 3.12.071), are in conflict with certain provisions of the constitution and, therefore, void. These statutes provide that in cities of over five thousand population a justice of the peace must be an attorney. Previous attempts to present this question have been abortive. See State ex rel. Bullock v. Stone, 45 Wn. (2d) 891, 273 P. (2d) 892 (279 P. (2d) 439), and Kitsap County v. Bremerton, 46 Wn. (2d) 362, 281 P. (2d) 841.

The respondent, a duly qualified elector in the city and precinct of Chehalis, Lewis county, brought this action contesting the election of appellant to the office of justice of the peace. He contends that the appellant, who is not an attorney, is ineligible to hold the office of justice of the peace in Chehalis, a city of over five thousand population, to which office he was elected in November, 1954.

The trial court held that the law in question was constitutional and entered a judgment declaring the appellant ineligible to hold the office of justice of the peace and decreeing that his certificate of election be canceled and revoked. The appellant was enjoined and restrained from acting or attempting to act as justice of the peace in Chehalis, under the purported certificate of election.

Appellant assigns error to the court's conclusions, con-

tending that the constitution impliedly prohibits legislation imposing qualifications on justices of the peace.

The constitution of this state is not a grant, but a restriction on the law-making power, and the power of the legislature to enact all reasonable laws is unrestrained except where, either expressly or by fair inference, it is prohibited by the state or Federal constitution. All doubts as to whether or not a state legislature had the power to pass a given enactment must be resolved in favor of the legislature. *Union High School Dist. No. 1 v. Taxpayers of Union High School Dist. No. 1*, 26 Wn. (2d) 1, 172 P. (2d) 591, and cases cited therein.

The office of justice of the peace is provided for in Art. IV, § 1, Washington constitution, pertaining to the judiciary. No qualifications for the office are prescribed in this article. Art. III, § 25, pertaining to the executive branch of the government, provides:

"No person except a citizen of the United States and a qualified elector of this state shall be eligible to hold any *state office,* and the state treasurer shall be ineligible for the term succeeding that for which he was elected. The compensation for state officers shall not be increased or diminished during the term for which they shall have been elected. The legislature may, in its discretion, abolish the offices of the lieutenant-governor, auditor and commissioner of public lands." (Italics ours.)

Article IV, § 17, declares that no person shall be eligible to the office of judge of the supreme court, or superior court, unless he shall have been admitted to practice law in this state or in the territory of Washington.

Appellant contends that justices of the peace are included within the meaning of the term "state officers," as used in Art. III, § 25; that, consequently, the constitution has prescribed qualifications for the office and, by implication, prohibited the legislature from imposing further qualifications.

State constitutions which prescribe qualifications for office holders generally and specific qualifications for certain officers, but are silent as to the qualifications for a particular office, have been construed to prohibit the legislative impo-

sition of any additional qualifications. *Thomas v. State ex rel. Cobb,* (Fla.) 58 So. (2d) 173, 34 A. L. R. (2d) 140; *Humphreys v. Walls,* 169 Md. 292, 181 Atl. 735; *Wynn v. State,* 67 Miss. 312, 7 So. 353. Similar provisions in the Nebraska constitution, however, have been given an opposite construction. *State ex rel. Quinn v. Marsh,* 141 Neb. 436, 3 N. W. (2d) 892. The court held in that case that provisions in the constitution which laid down minimum age requirements for certain offices did not give rise to a presumption that the legislature would be without power to prescribe reasonable qualifications for other offices. And, in *Boughton v. Price,* 70 Idaho 243, 215 P. (2d) 286, the court recognized the right of the legislature to prescribe additional reasonable qualifications for the office of district judge even though the constitution had provided specific qualifications for that office.

However, we will assume the preferable rule to be that, where the constitution has set forth qualifications for an office, either general or specific, in the absence of an express grant of power to the legislature, there is an implied prohibition against the imposition of additional qualifications by the legislature. Unless Art. III, § 25, was meant to apply to justices of the peace, the constitution has failed to provide any qualifications for that office, and there is no language from which we can infer an intent to prohibit legislative action on the subject.

So far as we have been able to ascertain, this court has never considered the question of whether Art. III, § 25, applies to the judiciary as well as to the executive. Art II, § 7, dealing with the legislative branch of the state government, contains a similar provision, but the article on the judiciary has no express provision requiring that judicial officers be citizens and electors of this state.

We have held that superior court judges are state officers within the meaning of Art. VI, § 8, providing for the time of election of all state officers "not otherwise provided for in this constitution." *State ex rel. Dyer v. Twichell,* 4 Wash. 715, 31 Pac. 19. The following, from that opinion,

was quoted with approval in *State ex rel. Edelstein v. Foley*, 6 Wn. (2d) 444, 107 P. (2d) 901:

"In certain places in the constitution reference is made to judicial officers in such a way as to show that they are not necessarily included in the designation state officers, but it does not follow that they are not included within such designation as used in some parts of the constitution. That they are more accurately described as state officers than as county or district officers is evident, not only from the character and extent of their jurisdiction and the locality in which they may be called upon to discharge their duties as such officers, but also from the fact that they are paid at least in part by the state, and vacancies occurring in the office are to be filled by the governor. In other states having similar provisions in their constitutions as to superior court judges they have uniformly been held to be state officers."

The question in that case was whether superior court judges are to be elected at the time provided for the election of county and district officers, or at the time provided for the election of state officers, there being no provision expressly applicable to judges. As the quotation reveals, we recognized that elsewhere in the constitution, judicial officers were not included in the term "state officers."

In construing Art. IV, § 4, giving this court original jurisdiction in *quo warranto* as to all state officers, we have held that superior court judges are included within the meaning of the term as used in that section. *State ex rel. Edelstein v. Foley, supra.* That case is directly contrary to *State ex rel. Home Tel. & Tel. Co. v. Hurn*, 106 Wash. 362, 180 Pac. 400, although it does not expressly overrule it. In the latter case, we held that a superior court judge is not a state officer within the meaning of Art. IV, § 4, of the constitution. We reviewed our earlier cases which dealt with the power of the supreme court to issue extraordinary writs to superior court judges, and found that they supported the view that writs to such officers can be issued only in aid of this court's appellate jurisdiction, and that consequently an application will be denied where the amount in controversy is less than two hundred dollars. The two hundred dollar limitation does not apply, however, where the writ is to be

directed to a state officer. We discussed at length the reasons why a superior court judge is not a state officer within the meaning of the constitution. These reasons are unchallenged in the later case of *State ex rel. Edelstein v. Foley, supra,* and the statement that a superior court judge is a state officer is unaccompanied by any rationale. The case offers little support for an argument that wherever the term "state officer" is used in the constitution, it includes judicial as well as executive officers.

Members of the judiciary are consistently referred to in Art. IV as judicial officers, rather than state officers. That the framers of the constitution recognized a distinction between executive state officers and judicial officers, is apparent from the language used in § 3, pertaining to the election and terms of office of supreme court judges:

"The judges of the supreme court shall be elected by the qualified electors of the state at large, at the general state election, at the times and places at which *state officers* are elected, unless some other time be provided by the legislature. . . ." (Italics ours.)

Had the drafters of the constitution meant to include *judges* within the term "state officers" as used in this section, logically they would have used the words, "other state officers."

Article IV, § 13 provides that the salaries of judges may not be increased after they are elected nor during the time for which they are elected, a provision substantially the same as that found in Art. III, § 25, relative to state officers. Had the latter section been intended to apply to judicial officers as well as to executive officers, it would have been unnecessary to repeat the provision in Art. IV.

The nongeneric nature of the term "state officer" is indicated again in Art. V, § 2, which provides:

"The governor and other state and judicial officers, except judges and justices of courts not of record, shall be liable to impeachment."

Since the citizenship and electoral requirements appear in both the legislative and executive sections of the constitution and do not appear in the judicial section, and

since the constitution so consistently refers to judges and justices as "judicial officers," we conclude that the framers did not intend Art. III, § 25, to apply to members of the judiciary. Had such an intention existed, the proper language to express it was at hand and, presumably, would have been used.

This view is consistent with our holding in *State ex rel. Fair v. Hamilton,* 92 Wash. 347, 159 Pac. 379, cited by appellant. We held in that case that a justice of the peace is a judicial officer, not a county executive nor administrative officer, and consequently is not a county officer within the meaning of Art. XI, §§ 4 and 5, of the constitution, requiring uniformity in county government, and Art. VI, § 8, requiring county officers to be elected biennially. See, also, *McElwain v. Abraham,* 58 Wash. 26, 107 Pac. 832.

Appellant urges that to construe Art. III, § 25, as inapplicable to the judiciary, would produce a result which the people could not reasonably have intended, the opening of the judiciary to aliens and transients. But judges must be licensed to practice law in this state, and the framers might have reasonably supposed that this privilege would not be extended to aliens, as in fact it is not. See Rule 16, Revised Rules for Admission to Practice, 34A Wn. (2d) (Sup. No. 5) 31, effective May 1, 1954. At the time the constitution was adopted, justices of the peace were required by law to be citizens of the United States and qualified electors. Laws of 1854, § 3, p. 223; Code of 1881, § 1691, p. 286. All laws then in force not repugnant to the constitution were to remain in force until they expired by their own limitation, by virtue of Art. XXVII, § 2, of the constitution.

██ The authority of the legislature to determine the powers, duties, and jurisdiction of justices of the peace was expressly granted in Art. IV, § 10. Laws governing the qualifications of these officers had been in effect for many years at the time the constitution was adopted. As early as 1899, the legislature prescribed that, in incorporated cities and towns of the first class, justices of the peace should be attorneys at law. Laws of 1899, chapter 85, § 1, p. 135. When Art. IV, § 10 was amended in 1952 (amendment 28), au-

thority was conferred upon the legislature in the same language as that which appears in the original provision. At that time, the power of the legislature to prescribe qualifications had never been questioned in this court. While that power is not expressly granted in the constitution, it must be remembered that a grant is unnecessary, and the enactment of such laws is not in conflict with any express or implied provision. On the contrary, the establishing and altering of qualifications is a function which should naturally follow the right to prescribe the powers, duties, and jurisdiction of an office. The legislature has consistently acted on the assumption that it had this power, both before and after the adoption of the constitution.

"Where a particular construction has been generally accepted as correct, and especially when this has occurred contemporaneously with the adoption of the constitution, and by those who had opportunity to understand the intention of the instrument, it is not to be denied that a strong presumption exists that the construction rightly interprets the intention." 1 Cooley's Constitutional Limitations (8th ed.) 144 (1927).

See, also, *State ex rel. Blakeslee v. Clausen,* 85 Wash. 260, 148 Pac. 28.

■ The requirement that justices of the peace be attorneys is not an unreasonable one, since the duties of that office are best discharged by persons having training in and knowledge of the law. Neither is the classification based upon population an arbitrary one. Rural areas produce comparatively little litigation and often cannot support an attorney. Where the exact line between the larger and smaller populations should be drawn, is necessarily a matter of legislative discretion. *State ex rel. Lindsey v. Derbyshire,* 79 Wash. 227, 140 Pac. 540. The acts are uniform in their application and consequently not in conflict with Art. I, § 12, forbidding laws which grant special corporate powers or privileges, or which grant special privileges to persons or corporations, other than municipal. See *State ex rel. Lindsey v. Derbyshire, supra.*

Since the enactment of Laws of 1951, chapter 74, and

chapter 156, § 2, was within the power of the legislature, appellant is ineligible to serve as justice of the peace in Chehalis precinct, Lewis county, Washington, and his certificate of election must be revoked.

The judgment is affirmed.

ALL CONCUR.