[No. 87823-4.   En Banc.]
Argued October 18, 2012.     Decided December 6, 2012.

VICKI LEE ANNE PARKER ET AL., *Appellants*, v. KIM WYMAN, *as Thurston County Auditor*, ET AL., *Respondents*.

MARIE C. CLARKE, *Appellant*, v. KIM WYMAN, *as Thurston County Auditor*, ET AL., *Respondents*.

Vicki Parker and James Johnson, pro se.

Marie C. Clark, pro se.

Jon Tunheim, Prosecuting Attorney for Thurston County, and David V. Klumpp, Deputy; Philip A. Talmadge (of Talmadge/Fitzpatrick); and Shawn T. Newman, for respondents.

*Jeffrey T. Even, Deputy Solicitor General,* and *Peter B. Gonick, Assistant Attorney General,* on behalf of the State of Washington, amicus curiae.

¶1 MADSEN, C.J. — Vicki Parker, James Johnson, and Marie Clarke appealed directly to this court from an order of the Thurston County Superior Court denying them relief in an action challenging the candidacy of Christine Schaller for the office of judge of the Thurston County Superior Court. Appellants argue that Schaller is not statutorily eligible for the office because she does not reside in, and therefore is not a qualified elector of, Thurston County. We hold that Schaller is not required to reside in or be an elector of Thurston County to be eligible for the office. Accordingly, we affirm the superior court.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Christine Schaller has been an appointed commissioner of the Thurston County Superior Court since 2005. Although she is not a resident of Thurston County, Schaller decided to run for one of the Thurston County judgeships that became open for election in 2012. Under the state constitution, a person is eligible for the office of superior court judge if he or she has been admitted to practice before the courts of record in this state. WASH. CONST. art. IV, § 17. But a statute states that no person is qualified to hold an elective office within "any county" in this state unless that person is "an elector of such county." RCW 42.04.020. Believing that the constitution states the only lawful qualification for the position of superior court judge, Schaller filed a petition for a writ of mandamus in this court asking the court to direct the secretary of state to ensure that the statutory elector requirement did not prevent the candi-

dacy of those who were qualified under the constitution. The court denied Schaller's petition by commissioner's ruling, determining that mandamus relief was not appropriate in the circumstances.

¶3 In May 2012, Schaller filed a declaration of candidacy. Other candidates declaring for the office were James Johnson, Marie Clarke, and Victor Minjares. On May 29, Thurston County resident Vicki Parker filed a petition in Thurston County Superior Court seeking a declaration that Schaller is not eligible for the judgeship and an order directing Thurston County Auditor Kim Wyman to not place Schaller's name on the primary election ballot. Johnson moved to intervene. The superior court denied Johnson's motion to intervene and dismissed Parker's action as untimely.

¶4 The primary election proceeded on August 7, 2012, with Schaller receiving 48.56 percent of the vote and Johnson coming in second with 22.05 percent, as a result of which Schaller and Johnson advanced to the November general election. On August 22, 2012, Parker and Johnson filed a petition in Thurston County Superior Court pursuant to RCW 29A.68.011, seeking an order prohibiting Wyman from placing Schaller's name on the general election ballot.[1] That same day Clarke also filed a petition under RCW 29A.68.011, seeking writs of prohibition and mandamus.

¶5 A visiting judge heard the matter, and on August 31, 2012, the superior court issued a memorandum opinion and order denying relief, holding that in light of the exclusive qualification within the state constitution, RCW 42.04.020 does not apply to superior court judges and thus Schaller is eligible to run for Thurston County Superior Court judge. Parker and Johnson filed a notice of appeal directly to this court, and Clarke filed a separate notice of appeal. The court set the matter for expedited consideration.

---

[1] RCW 29A.68.011 permits an action to prevent the wrongful placement of a name on the ballot. RCW 29A.68.011(3).

¶6 Meanwhile, the general election proceeded and Schaller received 66.5 percent of the vote.

## ANALYSIS

### 1. *Appealability*

¶7 Preliminarily, respondents Schaller and Wyman raise the issue of whether the superior court's decision is appealable. All parties now agree that it is not, and we also agree. Appellants brought their actions pursuant to RCW 29A.68.011(3), which allows any Supreme Court justice or any Court of Appeals or superior court judge upon affidavit of an elector to issue an order preventing the wrongful placement of a name on the ballot.[2] An affidavit relating to the general election ballot must be filed in the appropriate court no later than three days after certification of the primary election returns, and the matter must be heard "and finally disposed of by the court" within five days after the filing. RCW 29A.68.011(6). Construing a predecessor statute containing the same operative language, this court held that a decision on a ballot challenge is not appealable. *Hatfield v. Greco*, 87 Wn.2d 780, 781, 557 P.2d 340 (1976); *see also Kreidler v. Eikenberry*, 111 Wn.2d 828, 834, 766 P.2d 438 (1989) (applying reasoning of *Hatfield* in holding that superior court's decision on review of initiative ballot title is not reviewable in light of statute making court's decision "final"). As we explained, the purpose of the statute is to obtain a speedy determination in order to settle the ballot in a reasonable time before the election. *Hatfield*, 87 Wn.2d at 782. Thus, the superior court's decision here is not appealable.

¶8 Appellants nonetheless urge us to exercise the court's inherent or constitutional power of review. *See* WASH. CONST. art. IV, § 4 (authorizing writs necessary and proper to

---

[2] Although we determine the superior court's decision is not appealable, since the parties challenging the court's decision sought this court's review by notices of appeal, we will continue to refer to them as "appellants."

the complete exercise of the court's appellate and revisory jurisdiction); *Kreidler*, 111 Wn.2d at 835 (legislature may not abridge the court's constitutional power to review lower court decisions by writ); *Williams v. Seattle Sch. Dist. No. 1*, 97 Wn.2d 215, 218, 643 P.2d 426 (1982) (constitutional right of judicial review exists notwithstanding statutory bar to review). We agree that we should review this matter. Precedent exists for this court's review by certiorari of superior court decisions on preelection ballot challenges. *See State ex rel. Pennick v. Hall*, 26 Wn.2d 172, 173 P.2d 153 (1946), *overruled in part on other grounds by State ex rel. O'Connell v. Dubuque*, 68 Wn.2d 553, 413 P.2d 972 (1966). And considerations of judicial economy support resolution of the merits now. As indicated, Schaller has won the general election. If this court were to decline to address the merits, the matter would inevitably reach the courts again by way of a postelection challenge to Schaller's eligibility to hold the office, which would raise precisely the same legal arguments. *See* RCW 29A.68.020(2) (authorizing postelection challenge on ground that person elected is not eligible for office). We also elect to reach the merits given the public importance and potentially recurring nature of the issue raised in this case. *See Tacoma News, Inc. v. Cayce*, 172 Wn.2d 58, 64, 256 P.3d 1179 (2011) (considerations governing whether to address moot issues).

## 2. *Qualifications for Superior Court Judge*

¶9 The Washington Constitution provides that "[n]o person shall be eligible to the office of judge of the supreme court, or judge of a superior court, unless he shall have been admitted to practice in the courts of record of this state, or of the Territory of Washington." WASH. CONST. art. IV, § 17. The constitution expresses no other qualification for the position of superior court judge. But RCW 42.04.020 provides

[t]hat no person shall be competent to qualify for or hold any elective public office within the state of Washington, or any

county, district, precinct, school district, municipal corporation or other district or political subdivision, unless he or she be a citizen of the United States and state of Washington and an elector of such county, district, precinct, school district, municipality or other district or political subdivision.

The issue as framed by the parties is whether this statute lawfully supplements the constitutional qualification of admission to practice in requiring superior court judges to be electors of the counties in which they are elected to their positions.[3]

■■ ¶10 Respondents' argument that Schaller is qualified for a Thurston County judgeship despite her Pierce County residency rests on a principle that this court first recognized in *In re Contested Election of Bartz*, 47 Wn.2d 161, 287 P.2d 119 (1955), that "where the constitution has set forth qualifications for an office, either general or specific, in the absence of an express grant of power to the legislature, there is an implied prohibition against the imposition of additional qualifications by the legislature." *Id.* at 164. Although we acknowledged this rule in *Bartz* and assumed for purposes of our analysis there that it was preferable to a rule that permits legislative supplementation of constitutional qualifications, we first expressly adopted the rule in *Gerberding v. Munro*, 134 Wn.2d 188, 949 P.2d 1366 (1998), where we held invalid an initiative setting terms limits for state legislative offices and some state executive offices. *Id.* at 210. As indicated, the Washington Constitution articulates no qualification for superior court judge but admission to practice before the state courts of record. WASH. CONST. art. IV, § 17. Relying on *Gerberding*, respondents reason that the legislature may not add to that qualification by requiring superior court judges to be electors of the counties in which they hold their positions. *See Wallace v. Superior Court*, 141

---

[3] Under the constitution, each county generally is to have at least one superior court judge who is elected by the electors of the county. WASH. CONST. art. IV, § 5. In practice, and as allowed and provided for by the constitution, some judges preside over multiple counties. *Id.*

Cal. App. 2d 771, 298 P.2d 69 (1956), *disapproved in part on other grounds by Knoll v. Davidson*, 12 Cal. 3d 335, 525 P.2d 1273, 116 Cal. Rptr. 97 (1974) (holding that similar former provision in California Constitution precluded enactment of statute establishing local residency requirements for superior court judges). The superior court here based its decision largely on this reasoning.

■ ■ ¶11 Appellants stake their position primarily on article XXVII, section 2 of the state constitution. That section states in relevant part, "All laws now in force in the Territory of Washington, which are not repugnant to this Constitution, shall remain in force until they expire by their own limitation, or are altered or repealed by the legislature." WASH. CONST. art. XXVII, § 2. Appellants note that soon after the establishment of the Washington Territory the territorial legislature enacted a statute providing that those "who shall have resided six months in the territory, and twenty days in the county, next preceding the day of election, and none others, shall be entitled to hold office, or vote at any election in this territory." LAWS OF 1854, § 1, at 7. A similar provision existed in later-enacted territorial statutes, one of which the code reviser identifies as a predecessor to the current RCW 42.04.020. *See* CODE OF 1881, ch. CCXXXVIII, § 3050. Under that provision, "American male citizens" over 21 "who shall have resided six months in the territory, and thirty days in the county next preceding the day of election, and none other, shall be entitled to hold office or vote at any election in this territory." *Id.* Appellants further cite an 1881 territorial statute that provided that every office became vacant when the person holding the office "ceas[ed] to be an inhabitant of the district, county, town or village for which he shall [have] been elected or appointed, or within which the duties of his office are to be discharged." CODE OF 1881, ch. CCXL, § 3063. The code reviser traces this statute forward to the current statute codified at RCW 42.12.010(4), which mandates the

vacancy of an elective office when the holder stops being "a legally registered voter of the district, county, city, town, or other municipal or quasi municipal corporation from which he or she shall have been elected." On the basis of article XXVII, section 2, appellants argue that with the adoption of the state constitution, the territorial and county residency requirements remained in effect as to all elective offices in the state, thus extending to the newly created office of superior court judge.[4]

¶12 But the threshold question is whether these territorial statutes, assuming they survived the adoption of the constitution, even required superior court judges to be residents of the counties in which they were elected. Our reading of the statutes is that they did not. The residency statute in its latest territorial form generally required "American" citizenship and residency within the state (territory) and further required residency within a county in order to be eligible for an elective office. But in terms of eligibility for office, the county residency requirement necessarily applied only to county offices or other offices representing particular political subdivisions. The election statutes did not apply during territorial times to statewide executive offices because the holders of those offices were appointed. ORGANIC ACT § 11. And once the constitution was adopted to provide for elected statewide executive offices, statutory county residency requirements still did not apply, since those offices were of statewide reach and the constitution itself expressly required only United States citizen-

---

[4] Appellants also refer to the Organic Act, which required the three appointed territorial Supreme Court justices to be residents of the districts covered by the district courts to which they were assigned. ORGANIC ACT § 9. They further cite early territorial statutes requiring justices of the peace to be qualified voters and residents of the counties in which they were elected, and the elected probate judge for each county to be an elector. See LAWS OF 1854, at 223, 309. But the territorial statewide judicial system was wholly supplanted by the Supreme Court and superior court systems established by the constitution. Thus, these territorial statutes necessarily expired and are not subject to article XXVII, section 2. The constitution continued to provide for justices of the peace, but the framers authorized the legislature to enact statutes governing that position, including qualifications. *Bartz*, 47 Wn.2d at 167-68.

ship and state elector status for state executive offices. WASH. CONST. art. III, § 25. The current statute reinforces this division of elective offices into state offices and offices of political subdivisions like counties, with the former requiring state and federal citizenship and the latter additionally requiring residency within the particular political subdivision the office serves or represents. RCW 42.04.020. The question in our view, then, is whether for purposes of these statutes, a superior court judge is a state officer or a county officer.

¶13 Early in statehood this court was faced with the question of whether superior court judges are state officers or county officers for purposes of article VI, section 8 of the Washington Constitution, which specified that the first election of "county and district officers" was to take place in 1890 and biennially thereafter and that the first election of "state officers" after the election for the adoption of the constitution was to take place in 1892 and every four years thereafter. We held that under this provision superior court judges are state officers. *State ex rel. Dyer v. Twichell*, 4 Wash. 715, 31 P. 19 (1892). As the court there explained, "[t]hat [superior court judges] are more accurately described as state officers than as county or district officers is evident, not only from the character and extent of their jurisdiction and the locality in which they may be called upon to discharge their duties as such officers, but also from the fact that they are paid, at least in part by the state, and vacancies occurring in the office are to be filled by the governor." *Id.* at 720. And in construing the constitutional provision giving this court original mandamus and quo warranto jurisdiction as to all "state officers," article IV, section 4 of the Washington Constitution, we held that superior court judges are state officers. *State ex rel. Edelstein v. Foley*, 6 Wn.2d 444, 448, 107 P.2d 901 (1940).

¶14 It is true, as we acknowledged in *Edelstein*, that we have in some cases characterized superior court judges as being both state and county officers. *Id.* at 448. But we have

done so mainly in relation to salaries, responsibility for which is divided between the state and the counties. *See, e.g., State ex rel. Lawler v. Grant*, 178 Wash. 61, 70, 34 P.2d 355 (1934); *State ex rel. Pischue v. Olson*, 173 Wash. 60, 65, 21 P.2d 516 (1933); *In re Salary of Superior Court Judges*, 82 Wash. 623, 628, 144 P. 929 (1914). And we have never said that superior court judges are solely county officers for any purpose. Although we recognize that generally the superior court judges within any county are elected only by the voters of that county, it has also been the case since statehood that some judges preside over, and are elected by the voters of, multiple counties. WASH. CONST. art. IV, § 5; *see also* RCW 2.08.064. In our view the statutory local residency requirements are, and have been, directed at those officers whose authority or representational capacity is limited to specific political subdivisions or districts of the state. The superior courts, in contrast, have universal statewide jurisdiction and authority, with the legislature empowered only to enact statutes limiting the venue of actions to certain counties. *Young v. Clark*, 149 Wn.2d 130, 134, 65 P.3d 1192 (2003); *Shoop v. Kittitas County*, 149 Wn.2d 29, 37, 65 P.3d 1194 (2003).

¶15 This view is reinforced by another principle that we relied on in *Gerberding* and have cited approvingly in other decisions: that there is presumption in favor of eligibility for elective office. As we explained in *Gerberding*, the common right to participate in government includes both the unqualified right of any eligible person in this state to run for elective office and the unqualified right of the people to choose from among those running the person who will hold the office. It follows, we observed, " 'that eligibility to an office in the state is to be presumed rather than to be denied, and . . . that any doubt as to the eligibility of any person to hold an office must be resolved against the doubt.' " *Gerberding*, 134 Wn.2d at 202 (quoting *State v. Schragg*, 158 Wash. 74, 78, 291 P. 321 (1930)); *see also Dubuque*, 68 Wn.2d at 566 (strong policy in favor of eligi-

bility for public office "and the constitution, where the language and context allows, should be construed so as to preserve this eligibility"). Had the framers and early legislators intended to require superior court judges to reside in the counties in which they were elected, it is far more likely they would have carried out that intent by express provision rather than by implied resort to a general territorial statute that is at best ambiguous in its applicability to the newly created position.

¶16 In sum, we hold that even if territorial residency requirements for elective offices survived the adoption of the state constitution, they did not require superior court judges to be electors or residents of the counties in which they sought office.[5] And it follows from the *Gerberding* rule that no subsequent legislation could impose such a requirement, since it is not expressed in the constitution or required by any statute that continued in effect under article XXVII, section 2 of the constitution.[6]

¶17 We affirm the trial court's judgment denying challenges to the placement of Schaller's name on the ballot for the position of Thurston County Superior Court judge.

## CONCLUSION

¶18 We hold that Christine Schaller need not be an elector or resident of Thurston County to qualify for the

---

[5] At most, the surviving statutes as applied to superior court judges would require United States citizenship and state residency, qualifications that Schaller unquestionably satisfies.

[6] The one express constitutional requirement is, as indicated, that judges be admitted to practice law in the state. WASH. CONST. art. IV, § 17. Although now United States citizenship is not a prerequisite for admission, we noted in *Bartz* that at the time of statehood the framers could have reasonably supposed that the privilege to practice law in the state would be extended only to citizens. *Bartz*, 47 Wn.2d at 167. And in fact a statute was soon enacted requiring United States citizenship for bar membership. LAWS OF 1891, ch. LV, § 9; *see Nielsen v. Wash. State Bar Ass'n*, 90 Wn.2d 818, 585 P.2d 1191 (1978) (later striking down this limitation under equal protection principles). And at least some recognition of the importance of state residency is reflected in article IV, section 8 of the state constitution, which requires the forfeiture of a judicial office by any judicial officer who is absent from the state for more than 60 consecutive days.

position of judge of the Thurston County Superior Court. Accordingly, the superior court is affirmed.[7]

C. JOHNSON, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.

¶19 CHAMBERS, J. (concurring) — I concur with the majority in result. The Washington State Constitution, our founding charter, sets forth the qualifications for being a superior court judge. They are simple. "No person shall be eligible to the office of judge . . . of a superior court, unless he shall have been admitted to practice in the courts of record of this state." CONST. art. IV, § 17. Under our constitution, any person admitted to practice in Washington courts of record is eligible to be a judge. The petitioners contend that the legislature may, and has, add additional qualifications to those set forth in the constitution. We have answered this question already, and the answer is no. *Gerberding v. Munro*, 134 Wn.2d 188, 210, 949 P.2d 1366 (1998); *In re Contested Election of Bartz*, 47 Wn.2d 161, 164, 287 P.2d 119 (1955).

¶20 I respectfully concur.

GONZÁLEZ, J., concurs with CHAMBERS, J.

---

[7] In light of our disposition, we need not address Schaller's argument that the superior court erred in excluding evidence of her background. Schaller also requests attorney fees as a sanction on the ground that the appeals are frivolous. *See* RAP 18.9(a). But they plainly are not. The request for attorney fees is therefore denied. Also denied is Clarke's motion to strike a statement of additional authorities that Schaller filed after oral argument.